AMERICAN MOTORISTS INSURANCE COMPANY *v.* KAREN
LATHROP GOULD
(13643)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued November 3, 1989—decision released February 6, 1990

*Michael Brodinsky,* for the appellant (plaintiff).
*Kathleen S. Mass,* for the appellee (defendant).

SHEA, J. The plaintiff American Motorists Insurance Company brought this application to vacate an arbitration award made to the defendant Karen Gould, pursuant to the compulsory arbitration provision of General Statutes § 38-175c (a) (1)[1] and based upon the

[1] "[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall

uninsured motorist coverage afforded by the automobile liability policy issued by the plaintiff. The trial court denied the application, rendering judgment for the defendant. In its appeal the plaintiff insurer raises two questions involving the construction of § 38-175c, our uninsured motorist coverage statute, and of the uninsured motorist provisions of the policy: (1) Is a tortfeasor's vehicle "underinsured," as that word is defined by § 38-175c (b) (2), when the aggregate limits of his liability insurance coverages applicable at the time of the accident exceed the uninsured motorist coverage available to the insured? and (2) When an insurance policy provides that its limit of uninsured motorist coverage shall be reduced by the amounts paid for bodily injury under the liability part of the policy, does this reduction apply only to the amounts received by the insured from the tortfeasor's liability carrier or does it also include payments made to other accident victims? We answer "No" to the first question and discuss the second only in relation to the first.

The facts are undisputed. On August 31, 1984, the defendant and three other persons were passengers in an automobile being driven by Wesley Bamford when

provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceedings shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

it was involved in a one car accident. All four passengers were injured. The plaintiff had issued a policy affording $100,000 of liability insurance coverage for the Bamford vehicle. An additional $40,000 of liability insurance for the accident was provided under an excess policy issued by Chubb Insurance Company. The total of $140,000 of liability insurance was made available to the four injured passengers and was allocated among them pursuant to an agreement by which the defendant received $21,000, 15 percent of the total.

The policy issued by the plaintiff on the Bamford vehicle also provided $80,000 of uninsured motorist coverage.[2] Under policies issued by Nationwide Insurance Company on vehicles owned by other members of the defendant's family, an additional $40,000 of uninsured motorist coverage was available to her. The defendant submitted her uninsured motorist claim to arbitration pursuant to § 38-175c (a) (1). The arbitrators found that the defendant had sustained damages of $35,000 and, after deducting the $21,000 she had previously received, awarded her $14,000. Of this amount, $4666.67 was ordered to be paid by Nationwide[3] and $9333.33 by the plaintiff.

I

Section 38-175c (a) (1) requires insurance, designated as "uninsured motorist coverage," for protection against operators of uninsured and underinsured motor vehicles, as well as insured motor vehicles whose insurers become insolvent. Thus, statutory provisions relating expressly to uninsured motorist coverage apply also to underinsured motorists.

---

[2] The policy issued by the plaintiff provides that it "will pay damages which a covered person is legally entitled to recover, from the owner or operator of an uninsured motor vehicle because of bodily injury: (1) Sustained by a covered person; and (2) Caused by an accident." The policy provides that "covered person" includes the insured or any family member and "[a]ny other person occupying [the insured's] covered auto."

[3] Nationwide Insurance Company has not appealed from the judgment.

Section 38-175c (b) (2)[4] defines an "underinsured motor vehicle" as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."[5] The plaintiff insurer claims that, because total liability insurance of $140,000 for Bamford was available to all the victims of the accident, an amount exceeding the defendant's uninsured motorist coverage limit provided by the Bamford policy of $80,000,[6] the automobile involved was not "underinsured" according to this definition.[7] The defendant maintains, however, that the phrase, "limits of liabil-

---

[4] General Statutes § 38-175c (b) (2) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[5] General Statutes § 38-175c (b) (1) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

[6] The policy issued by the plaintiff provided for uninsured motorist coverage of $40,000 for each of two vehicles and also stated that "[t]he maximum limit of our liability for Uninsured Motorists Coverage . . . is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle." Thus, the policy expressly provides for "stacking" of the limits on both vehicles. See *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982).

[7] The definition of an "uninsured motor vehicle" in the policy issued by the plaintiff includes an underinsured vehicle by virtue of language essentially similar to the definition of "underinsured motor vehicle" in General Statutes § 38-175c (b) (2): "a land motor vehicle or trailer of any type . . . (2) For which the sum of the limits of liability under all bodily injury bonds

ity under all . . . insurance policies applicable at the time of the accident," refers to the amount of liability insurance available to satisfy the claim of a particular claimant, which for her was only $21,000. The trial court agreed with the defendant that § 38-175c (b) (2) required "a comparison of the policy amounts applicable *to the claimant* to those available under her underinsured motorist coverage." (Emphasis in original.)

We have declared that § 38-175c (b) (2) "mandates that, in determining whether a motor vehicle is 'underinsured' for purposes of § 38-175c, the aggregate of the limits of all such bonds and policies *on the tortfeasor's motor vehicle* is compared against the amount of uninsured motorist coverage of the insured." (Emphasis in original.) *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 194, 530 A.2d 171 (1987). "If the aggregate is less than the limits of liability in the uninsured motorist portion of the insured's policy, then the underinsurance coverage is activated." Id. Under the *DelGreco* analysis of § 38-175c (b) (2), the Bamford vehicle would not have been "underinsured," because total liability insurance of $140,000 was available, a sum substantially in excess of the defendant's uninsured motorist coverage of $120,000 under both the Bamford vehicle policy and the Nationwide policy. The trial court distinguished *DelGreco,* however, because that case "involved only one injured claimant, and the Supreme Court had no occasion . . . to consider the situation raised when multiple claimants are exhausting the same liability coverages on the tortfeasor's motor vehicle as to the same collision."

or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage applicable to each vehicle insured for this coverage under this policy." Because it is not claimed that the policy definition is significantly different from the statutory definition, we need not consider it further. The policy provision would require discussion only in the event that the defendant contended that it afforded greater protection than the statute, a claim she has not asserted. See *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 483, 518 A.2d 373 (1986).

Unlike statutes in some other states that allow an insured to resort to his underinsured motorist coverage whenever his *damages* from an accident exceed the total liability insurance covering the tortfeasor, § 38-175c requires that the insured's *uninsured motorist coverage limits* be greater than the total liability limits for a vehicle before it may be deemed underinsured. *American Universal Ins. Co.* v. *DelGreco,* supra; R. T. Phillips, No Fault and Uninsured Motorist Automoble Insurance (D. Slavin ed. 1984) § 30.50 [2]. When there is only one accident victim, it is clear that in Connecticut the insured may not utilize his uninsured motorist coverage unless its limit exceeds the total amount of insurance available to satisfy claims against the tortfeasor. The defendant does not contend otherwise.

Statutes, like § 38-175c, that make the applicability of uninsured motorist coverage depend upon a comparison of uninsured motorist coverage limits with total liability insurance limits have been construed as intended "to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party." *Connolly* v. *Royal Globe Ins. Co.,* 455 A.2d 932 (Me. 1983). "It could not have been intended to place the insured who is injured by an underinsured motorist in a better position than one who is harmed by a motorist having the same insurance as the insured." *Dewberry* v. *Auto-Owner Ins. Co.,* 363 So. 2d 1077, 1081 (Fla. 1978). In the few cases involving such statutes as applied to a situation where there is more than one accident victim and the resulting claims exceed the total liability insurance limits, the courts have continued to regard uninsured motorist coverage as inaccessible when its limit is less than the total liability insurance available to all claimants. In *Manfredo* v. *Centennial Ins. Co.,* 124 App. Div. 2d 979, 508 N.Y.S.2d 811 (1986), the

court rejected the plaintiff's argument that the tortfeasor was an underinsured motorist when, due to recoveries by two other accident victims, the limits of liability insurance available to satisfy the plaintiff's judgment were insufficient. But see *Nationwide Mutual Ins. Co.* v. *Figliomeni*, 147 App. Div. 2d 942, 537 N.Y.S.2d 387 (1989). In *Billings* v. *State Farm Mutual Auto Ins. Co.*, 680 F. Sup. 778 (E.D. Va. 1988), where the plaintiff's uninsured motorist coverage was $50,000 as compared to the tortfeasor's liability coverage of $25,000, of which only $22,500 remained to satisfy the plaintiff's claim after the payment of $2500 to another accident victim, the court held that the full $25,000 liability limit would be deducted in determining the maximum liability of the uninsured motorist coverage carrier. In *Thiry* v. *Horace Mann Mutual Ins. Co.*, 269 N.W.2d 66 (Minn. 1978), it was held that a tortfeasor, whose liability insurance equaled the limit of an accident victim's underinsured motorist coverage, was not underinsured, even though a substantial portion of the liability coverage had been paid to other accident victims.

Courts construing statutes like § 38-175c that compare uninsured motorist coverage limits with tortfeasor liability limits have generally held that the legislative objective was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage. "Where an underinsured motor vehicle is statutorily defined as an insured motor vehicle with applicable liability limits less in amount than the injured person's uninsured motorist's limits, it is clear that the underinsured motorist coverage is not applicable if the insured person's uninsured motorist limits are equal to, or less than, the tortfeasor's liability limits." 3 I. Schemer, Automobile Liability Insurance § 35.06. The

defendant in this case was better able to obtain satisfaction of her claim than if Bamford had carried even $120,000 of liability insurance, the total of her uninsured motorist coverage, because $140,000 of liability insurance was available to her and the other claimants. The fact that liability coverage has now been exhausted because of multiple claims does not change the effect of the statute in activating uninsured motorist coverage only when the liability insurance of the tortfeasor is less in amount.[8] When, in a one car accident such as this, the policy provides for an uninsured motorist limit less than its liability limit, it is evident that no protection is afforded by the uninsured motorist coverage provided by the policy to the passengers beyond that already available as liability insurance. The legislature, however, must have been aware of such a consequence, since § 38-175c (a) (1) expressly provides that an insurer "shall not be required to provide [uninsured motorist] coverage with limits in excess of the bodily injury coverage of such policy issued to such named insured."

In construing the phrase in § 38-175c (b) (2), "insurance policies applicable at the time of the accident," to refer only to the amount of liability insurance available to satisfy the defendant's claim for damages, the trial court overlooked the fact that in ordinary parlance an insurance policy would be "applicable" if it covered any portion of a tortfeasor's liability rather than all of it. If there had been no claimants other than the defendant, "the sum of the limits of liability under" the policy issued by the plaintiff and that issued by the Chubb Insurance Company would equal $140,000, because

---

[8] Several states have statutes that expressly define an underinsured motor vehicle as one whose liability limits have been reduced by multiple claims to an amount less than the uninsured motorist coverage of the insured's policy. Colo. Rev. Stat. § 10-4-609 (4) (b) (1989); Tex. Ins. Code Ann. art. 5.06-1 (2) (b) (Vernon 1989); Va. Code Ann. § 38.2-2206B. (1989); W. Va. Code § 33-6-31 (b) (ii) (1989).

both policies were applicable to the accident. They did not become inapplicable simply because the sum of their liability limits was less than was necessary to satisfy all of the claims arising out of the accident.

## II

Having determined that the Bamford car was not underinsured within the definition of an "underinsured motor vehicle" in both the statute and the policy, we consider the policy provision reducing uninsured motorist limits by liability payments only to determine whether the policy can be construed to afford greater coverage than the statute requires. We find no incongruity between these provisions and the definition of an "underinsured motor vehicle" in § 38-175c (b) (2) that would alter the conclusion we reached in part I, supra, that the defendant must be denied access to her uninsured motorist coverage because its limit is less than the liability limits of the tortfeasor. In fact, the set-off provisions of the policy appear to have been designed to achieve the same result where the uninsured motorist coverage does not exceed the liability limit of the policy.

The insurance policy issued by the plaintiff contains a provision that the $80,000 limit of its liability for uninsured motorist coverage "shall be reduced by all sums . . . [p]aid because of the bodily injury by or on behalf of persons . . . who may be legally responsible. This includes all sums paid under Part A [the $100,000 limit of liability coverage] . . . . " The policy also provides that "[a]ny payment under this [uninsured motorists] coverage will reduce any amount that person is entitled to recover under Part A [liability coverage]." The plaintiff insurer has already paid the $100,000 liability limit to the defendant and three other passengers in behalf of Bamford, the driver of the car, whose negligence caused their injuries. The plaintiff maintains that, by

virtue of this payment and the policy provisions quoted, the uninsured motorist coverage of $80,000 that its policy otherwise would make available to the defendant has been reduced to nothing.

The trial court noted that the "effect of the above provision[s] would be to reduce uninsured/underinsured motorist coverage to zero as to an insured who has recovered under the liability coverage of the same policy in an amount equal to or in excess of the uninsured motorist coverage limit." Relying on that portion of the policy that provides that "[a]ny payment under this [uninsured motorist] coverage will reduce any amount *that* person is entitled to recover [for the same damages] under Part A" (emphasis added) the trial court ruled, however, that "read as a whole, the limitations on overall coverages available refer to payments to the particular insured, not to an aggregation of payments to all insured persons." The trial court concluded that "[w]ere the limitations to be read as the plaintiff now suggests, an insured who was one of several injured parties and who had received no payments under liability coverage could be denied payments under uninsured motorist coverage if the liability limit had been exhausted in payment to others. Read as a whole, the limitations do not provide for such a result."[9]

Pursuant to General Statutes § 38-175a, the insurance commissioner has adopted a regulation,

---

[9] The court also concluded that, because the plaintiff had not proved what portion of the $21,000 payment to the defendant it had provided under the liability portion of the policy, no reduction in the limit of uninsured motorist coverage available to the defendant could be allowed. In her trial brief, however, the defendant had expressly admitted the facts as stated in the application to vacate the award, which included an allegation that she had received $21,000 from the liability portion of the plaintiff's policy. The plaintiff was not obliged to prove a fact that was judicially admitted. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 199, 286 A.2d 308 (1971). The defendant has conceded error in the failure of the court to realize that the $21,000 payment had been made wholly by the plaintiff.

§ 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies, stating that "the policy may provide for the reduction of limits [under uninsured motorist coverage] to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury . . . or (3) paid under the policy in settlement of a liability claim."[10] This regulation does not specifically address whether the "reduction of limits" by virtue of payments made in settlement of a liability claim refers to the total paid to all victims of the accident or only to the amount paid to each victim.

The policy provision reducing uninsured motorist limits by payments made in behalf of the tortfeasor, specifically including "all sums" paid under the liability portion of the policy, expressly contemplates that the entire $100,000 paid in behalf of Bamford is to be subtracted from the defendant's uninsured motorist limit of $80,000. "[A]ll sums paid under Part A [liability coverage]" must be construed to refer to payments made to other victims as well as the $21,000 paid to the defendant. (Emphasis added.)

The defendant does not claim that the policy provision is inconsistent with the regulation nor did the trial court perceive any such conflict. The court, however, read the provision that "[a]ny payment under this [uninsured motorist] coverage will reduce any amount that person is entitled to recover [for the same damages] under Part A [liability coverage]" to imply that the pro-

---

[10] The defendant has not challenged the validity of the regulation. One commentator has indicated that the set-off of underinsured motorist benefits by the amount paid by the tortfeasor's liability carrier is authorized by the following provision of General Statutes § 38-175c (b) (1): "[I]n no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." R. T. Phillips, No Fault and Uninsured Motorist Automobile Insurance (D. Slavin ed. 1984) § 30.50 [2].

visions reducing uninsured motorist limits for "all sums" paid under the liability coverage refer only to payments made to the particular insured claimant.

We are not persuaded that the unambiguous provision that "all sums" paid by virtue of the liability coverage of the policy shall reduce its uninsured motorist limits can be deemed to have been amended by the provision relating to a different matter, i.e., the reduction of liability limits by payments under uninsured motorist coverage, to which the regulation concerning the reduction of the uninsured motorist limits does not pertain. Whatever may be the reason for referring to "that person" in the latter provision, it cannot reasonably be construed to create an ambiguity in the former. Since the provision reducing uninsured motorist limits by sums paid as liability insurance is clear and is not affected by the provision reducing liability limits by amounts paid as uninsured motorist insurance, the court had no occasion to apply the principle that ambiguities in a policy should be resolved in favor of an insured. *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.*, 203 Conn. 667, 672, 526 A.2d 522 (1987).

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment in favor of the plaintiff setting aside the arbitration award.

In this opinion the other justices concurred.