COVENANT INSURANCE COMPANY *v.*
ERNESTINE COON ET AL.
(14246)

PETERS, C. J., GLASS, COVELLO and SANTANIELLO, Js.[1]

Argued May 30—decision released August 6, 1991

*Eugene A. Cooney,* with whom, on the brief, was *Rodd J. Mantell,* for the appellant (plaintiff).

---

[1] The parties have agreed to have this case decided by four justices.

*Kathleen S. Mass,* with whom, on the brief, was *Vincent R. Falcone,* for the appellee (named defendant).

*James J. Carroll,* for the appellee (defendant North River Insurance Company).

COVELLO, J. This is an appeal from a judgment of the trial court denying the plaintiff's application to vacate an arbitration award. The issues on appeal are: (1) whether in determining if a vehicle is "underinsured" within the meaning of General Statutes § 38a-336 (d), the limit of a tortfeasor's liability insurance is construed to be the policy's per accident limit or per person limit; and (2) whether underinsured motorist coverage under separate policies covering the victim may be "stacked"[2] for the purposes of determining if a vehicle is underinsured.

The trial court found the following facts. On December 7, 1985, Ernestine Coon, a passenger in a vehicle owned and operated by Robert Sabo, sustained injuries when the Sabo vehicle was struck by a vehicle owned and operated by Anthony Sacco. The accident was solely Sacco's fault. At the time of the accident, Coon owned an insurance policy issued by North River Insurance Company (North River) with underinsured motorist coverage[3] of $20,000. Sabo owned a policy issued by the plaintiff, Covenant Insurance Company (Covenant) providing underinsured motorist coverage of $50,000. Sacco had liability insurance through Aetna

---

[2] " 'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388 n.2, 446 A.2d 1059 (1982).

[3] Uninsured motorist coverage provides "protection against operators of uninsured and underinsured motor vehicles, as well as insured motor vehicles whose insurers become insolvent." *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 628, 569 A.2d 1105 (1990). We have held that statutory provisions applying to uninsured motorist policies apply equally to underinsured motorist situations. Id.

Insurance Company (Aetna) with liability limits of $25,000 per person and $50,000 per accident. Aetna paid Coon $25,000. Because the value of her injuries exceeded $25,000, Coon sought additional recovery from North River and Covenant pursuant to the underinsured motorist provisions of those policies.

Unable to agree that the Sacco vehicle was an underinsured vehicle within the meaning of General Statutes § 38a-336 (d), the parties submitted that issue to arbitration. In order to determine whether the vehicle was underinsured, the arbitrators "stacked" the $50,000 Covenant and the $20,000 North River underinsured motorist limits to arrive at a total underinsured limit of $70,000. They compared the $70,000 coverage thus calculated against the $25,000 available under Sacco's liability insurance. They concluded that because the $70,000 uninsured motorist coverage was greater than the $25,000 liability coverage, the Sacco vehicle was therefore an "underinsured vehicle" within the meaning of § 38a-336 (d).[4] The arbitrators thereafter awarded Coon $45,000 for her injuries above the $25,000 already paid by Aetna; $32,142.86 from Covenant and $12,857.14 from North River.

Covenant and North River applied to vacate the award in Superior Court claiming, not that the award was excessive, but that the Sacco vehicle was not an underinsured vehicle within the meaning of General Statutes § 38a-336 (d) and therefore that the underinsured motorist provisions of the two policies were not

[4] General Statutes § 38a-336 (d), formerly § 38-175c, states: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

applicable to Coon's claims. Specifically, they argued that (1) the underinsured motorist limits in the two separate policies should not be stacked in determining whether the Sacco vehicle was underinsured, and (2) the arbitrators should have used the $50,000 per accident liability limit and not the $25,000 per person limit in comparing the tortfeasor's liability insurance coverage with the victim's underinsured motorist coverage. The trial court concluded that, for the purpose of making the comparison required by § 38a-336 (d), stacking of the underinsured motorist coverage was permitted and that the $25,000 available to Coon under the Aetna policy represented the liability insurance limits. The trial court therefore denied the application to vacate the arbitration award. Covenant appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023.

I

Covenant first claims that the arbitrators improperly determined that the Sacco vehicle was underinsured. Specifically, it argues that, in determining whether the Sacco vehicle was underinsured within the meaning of § 38a-336 (d), the amount of liability insurance on the Sacco vehicle was the $50,000 per accident limit and not the $25,000 per person limit. We disagree.

Application of § 38a-336 involves two separate inquiries. First, it must be determined whether the tortfeasor's vehicle is an "underinsured vehicle" within the meaning of the statute. Second, after this determination is made and underinsured motorist coverage is found to be applicable, the finder of fact calculates the amount of the award to be paid the victim.

An "underinsured vehicle" is defined in § 38a-336 (d) as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability

bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made . . . ." Thus, § 38a-336 requires that, in determining whether a motor vehicle is "underinsured" the total of all liability insurance coverage available to an individual claimant must be compared to the amount of underinsured motorist coverage in each of the policies against which the victim has a claim. If the total of the liability insurance is less than the uninsured motorist limits of the individual's policy, then the uninsured motorist coverage becomes applicable.

Neither the text nor the legislative history of § 38a-336 addresses directly the circumstance in which the tortfeasor's liability insurance policy has two different liability limits. We have, however, previously concluded that in determining the tortfeasor's liability limit for the purposes of the § 38a-336 (d) comparison, we must examine the amount "of liability insurance [*that is*] available to [*the victims*]." (Emphasis added.) *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 633, 569 A.2d 1105 (1990).[5] Here, even though Sacco had $50,000 per accident liability limits, Coon never had more than $25,000 of this coverage potentially available to her. Thus, it is consistent with our earlier interpretation of § 38a-336 to conclude that the total of the per person limit is the amount of liability insurance available to the claimant, i.e., $25,000.

---

[5] We note that even though *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 569 A.2d 1105 (1990), involved a different factual context, in that opinion we compared the uninsured motorist limit against the amount of liability insurance potentially available to the victims. This is consistent with our holding in *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 248–49, 449 A.2d 157 (1982), in which we interpreted our uninsured motorist statute from the perspective of the person covered.

## II

Covenant next claims that, even if the per person liability limit is adopted for the purposes of the § 38a-336 (d) comparison, the arbitrators should not have stacked the underinsured motorist coverage from two different policies covering the victim in determining whether the Sacco vehicle was an underinsured vehicle. The plaintiff specifically argues that the arbitrators improperly combined the $20,000 in underinsured motorist insurance available under the North River policy and the $50,000 in underinsured motorist insurance available under the Covenant policy to arrive at the $70,000 total underinsured motorist coverage. We agree.

In the context of determining the final award to be paid the victim, we have said that "[w]hile General Statutes § [38a-336] . . . does not specifically address the issue of 'stacking' coverage . . . a fair reading of the statute discloses no prohibition against such aggregations." *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 529, 569 A.2d 541 (1990). In making the initial determination of whether a tortfeasor's vehicle is underinsured, however, § 38a-336 (d) states that "an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under *all . . . policies* applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of *the policy* against which claim is made . . . ." (Emphasis added.) Thus, in making the initial determination whether a vehicle is underinsured, § 38a-336 clearly states that the aggregate of the liability limits under all of the tortfeasor's *policies* are to be compared with the uninsured motorist coverage limit of *the policy* against which a claim is made. The statute unequivocally refers to the liability provisions in the plural but the uninsured motorist provisions in the

singular.[6] Consequently, the analysis directed by § 38a-336 requires a comparison between the *aggregate* of liability limits available to the victim against the underinsured motorist limits in each *single* policy against which the victim has a claim.

Coon claims that in making previous underinsured motorist analyses, we have compared the total of all liability policies insuring the tortfeasor's vehicle against the total of all underinsured motorist policies insuring the victim. *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 630, 569 A.2d 1105 (1990). The defendant further argues that we have sanctioned "the 'stacking' of uninsured motorist coverages in situations involving separate and distinct policies that were both applicable to a given claim (interpolicy 'stacking')." *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 528, 569 A.2d 541 (1990). Coon's argument overlooks the fact that in *Cohn,* and other cases discussing interpolicy stacking, we have permitted interpolicy stacking only in the context of making a determination of the amount of the award to be paid the victim. We have not, however, allowed interpolicy stacking to be interjected into the initial determination whether a tortfeasor's vehicle is underinsured and thus whether the underinsured policy provisions apply at all.

The application of § 38a-336 requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) calculating the amount of the actual award due the victim.

---

[6] We recognize that in the interpretation of statutes, singular terms may have a plural meaning. The statute in this case, however, is not ambiguous and it would contravene the clear terms of the statute to read "the policy" to mean "the policies." Furthermore, the fact that the legislature used both plural and singular terms in the statute is a strong indication that the use of the singular was deliberate. To the extent that we implied otherwise in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 394, 446 A.2d 1059 (1982), we now hold to the contrary.

The statute does not prohibit stacking of coverage in determining the total amount of the award due the victim. The statute is unequivocal, however, in establishing the mechanism for determining whether a vehicle is underinsured, and it specifically limits consideration of underinsured motorist coverage to each policy separately. *Farm & City Ins. Co.* v. *Stevens*, 215 Conn. 157, 161, 574 A.2d 1300 (1990) (stacking of coverage of separate vehicles listed under *single* policy permitted). While our holding in *Gould* could be interpreted as stating that the underinsured motorist provisions of different policies could be stacked in making the initial determination whether a tortfeasor's vehicle is underinsured, such a construction is inconsistent with the express language of the statute and, to the extent that *Gould* implied otherwise, we now hold to the contrary.

In the context of this case, the initial question is whether the Sacco vehicle is underinsured with respect to the two underinsured motorist provisions of the policies against which claim is made. As directed by the statute, this analysis must be undertaken with respect to each policy. As concerns North River, the tortfeasor's liability limit of $25,000 exceeds the underinsured motorist coverage of $20,000. The Sacco vehicle is therefore not underinsured with respect to this policy and therefore Coon has no claim against North River. With respect to Covenant, however, Sacco's $25,000 liability limit does not exceed the $50,000 in underinsured motorist coverage available under the policy and therefore the Sacco vehicle is underinsured with respect to the Covenant policy.

## III

We next address the separate question of how much is due Coon. Section 38a-336 (b) states: "An insurance company shall be obligated to make payment to its

insured up to the limits of the policy's uninsured motorist coverage . . . but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." Thus the $50,000 available under the Covenant policy forms an upper limit beyond which the victim cannot recover from Covenant. The recovery from Covenant therefore must be reduced by the $25,000 already paid to the victim from the Aetna policy. The total recovery for the victim from Covenant is thus $50,000 minus $25,000, or $25,000.

The judgment is reversed and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other justices concurred.

