[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are companion cases which have been consolidated to eliminate a duplication of effort in the determination of whether arbitration award should be confirmed or vacated.
The principal issue before the court is whether Anthony D'Addio, hereinafter referred to as the claimant, was an insured under the policy in question.
The facts giving rise to the dispute may be summarized as follows:
On December 23, 1988, the claimant was involved in a motor vehicle accident while operating his employer's vehicle. His car was struck by an uninsured vehicle. This accident gave rise to a claim for worker's compensation benefits against the employer and a claim for uninsured motorist benefits against American Universal Insurance Company. This latter claim was based on an automobile policy issued to the claimant's mother. When American Universal was declared insolvent in January of 1991, the Connecticut Insurance Guaranty Association (hereinafter CIGA) succeeded to its role and became respondent to the claim pursuant to 38a-841 of the Connecticut General Statutes.
This matter has had a torturous journey to the Superior Court, but is here now on an arbitration award in the net amount of $274,776.43. I.
On the issue of whether the claimant is an insured under his mother's policy, these facts are relevant.
The claimant resides in his mother's two family house. He is a self sufficient employed adult. He occupies a third floor "penthouse", his mother and sister live on the second floor, his mother rents the first floor. He pays rent to his mother, has his own kitchen and purchases and prepares his own meals. He uses a bathroom on the second floor and shares the stairway entrance to CT Page 4182 his unit with the second floor occupants. This arrangement has existed since the claimant was sixteen years of age. In 1988 he owned a car which was insured, however the transmission "blew" and on December 23, 1988 it was not operable, was not registered, and was not insured. The claimant has used his mother's car from time to time and also rode a bicycle when "weather permitted." In referring to his living arrangements, the claimant explained that he lived in his mother's unit and when he was sixteen, "I just got fed up with them arguing. I had to go somewhere. I was out." At this point, he moved to the third floor unit. The claimant is not named in the policy as a covered insured.
Under the policy, the claimants mother is the named insured, along with any "family member." A "family member" is defined as "a person related to you (i.e., the insured) by blood, marriage or adoption who is a resident of your household . . . ."
Our Supreme Court has addressed this issue and has stated that whether a person is a "resident" within a "household" most be determined on the factual circumstances in each case. Griffith v. Security Ins. Co., 167 Conn. 450, 458 (1975).
In the earlier case of Rathbum v. Aetna Casualty and Surety Co., 144 Conn. 165 (1956), the court discussed "family" and "household", noting the Webster Dictionary definition of "household" as
 "those who dwell under the same roof and compose a family; a domestic establishment; family." Id. at 169.
The concept of the word "family" is broader than that of the word "household". Id. at 168. The court also noted that "The word "family" is used in a variety of significations. In some cases the test is found in the `collective quality of the residence of the persons concerned, and the unity of their domestic government and control. In those uses it is said to mean and embrace all the members of a collective body of persons living in one household and under one head and domestic government, including servants and others as well as parents, children and kin." Id. at 168.
The court does not find in the evidence adduced before the arbitrators a "social unit" or a single "domestic establishment". There is no evidence of a contribution to support and maintain the mother's household. The claimant slept in his own separate unit and provided for his own food and meal preparation. There is no suggestion of a sharing of community life, a common goal, or a cooperative effort to achieve a common end. CT Page 4183
In brief, the record in this case lacks the substantial evidence to support the conclusion that the claimant was a resident of his mother's household. Consequently, in accordance with that standard of review which this court must apply according to Chmielewski v. Aetna Casualty Surety Company, 218 Conn. 646,656-667 (1991), the arbitrators' award and decision is vacated.
 II.
Since the conclusion reached above may be appealed, the court will address another issue raised by CIGA in attacking the award. This has to do with credits to which it claims entitlement by virtue of workers' compensation payments paid and payable to the claimant.[1]
 A.
Though the claimant received $45,123.57 in medical expenses and temporary total benefits, the arbitrators deducted $20,000. on the assumption that the first $20,000. of workers' compensation benefits paid to the claimant was used up as a credit against the employer's self insured uninsured motorist limit of $20,000.
An insurer is not entitled to limit its exposure unless it incorporates into its policy language the appropriate reference to the Regulations of State Agencies, Sec. 38-175a-6 (d). There is nothing in the record to indicate that the claimant's employer, a self insurer, sought this limitation in the manner required.
 B.
Even if it is assumed that the employer was entitled to take its $20,000. credit against its limitation of coverage for the compensation benefits advanced, the regulations cited above does lot limit the application of the various credits it allows to a single insurer.
In Covenant Insurance Company v. Coon, 220 Conn. 30, 34
(1991), our Supreme Court addressed Sec. 38a-336 of the Connecticut General Statutes, specifically the definition of "uninsured vehicle".
That definition provides that an underinsured vehicle is "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made . . . ." Since the statute uses the term policy when it could have stated policies, the court concluded that "the analysis directed by 38a-336
CT Page 4184 requires comparison between the aggregate of liability limits available to the victim against the underinsured motorist limits in each single policy against which the victim has a claim." Id. at 36.
CIGA argues, by analogy, that since 38-175a-6 (d) of the Regulations of Connecticut State Agencies permits an insurer to take a credit against its policy without any suggestion that the credit need be apportioned among multiple uninsured motorist carriers, the arbitration panel clearly erred in not applying a credit for the full amount of workers' compensation benefits paid to the defendant.
The court finds this argument persuasive and concludes that the arbitrators erred in failing to give CIGA full credit for the $45,123.57.
 C.
The parties are also at odds over the question of whenever a insurer is entitled to a credit for future Workers' Compensation Benefits to be paid for specific disabilities.
To take the position advocated by this claimant would encourage parties to delay closing out the specific injury portion of the claim until after arbitration. Then, contrary to the intent of Sec. 38-175a-6 (d), a claimant would, in effect, recover twice for the same loss.
The court concludes that since this regulation permits an insurer to take a credit for amounts payable, it contemplates future payments to be received by a claimant.
Computing such an amount is not so difficult as to warrant frustrating the intent of the regulation. In most cases, that difficulty can be avoided by expediting the compensation award process.
The failure to apply a credit for the future workers' compensation benefits was also an error.
 III.
In view of he court's decisions on the claims of law treated above, there appears to be no need to determine the questions of the failure of the arbitrators to grant a continuance and the awarding of interest to the claimant.
ANTHONY V. DeMAYO, JUDGE CT Page 4185