[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #116
On May 10, 1994, the plaintiff, Rocco D'Arcangelo, filed a single count complaint against the defendant, Hartford Casualty Ins. Co. By an amendment, on April 4, 1995, the plaintiff added a second count against the defendant.
The factual allegations in the complaint are not disputed.[1]
On August 29, 1992, the plaintiff was a passenger in a vehicle driven by August Wildman. The Wildman vehicle collided with a vehicle driven by Judith Nicolari. Nicolari's liability insurance has a single limit of $500,000. This amount has been exhausted.[2]
In his complaint, the plaintiff seeks to recover underinsured motorist benefits. In count one, the plaintiff is making a claim under a policy issued to Florindo and Malfaldo D'Arcangelo for three vehicles. The defendant issued this policy (the D'Arcangelo policy). It provides $100,000 coverage per person and $300,000 per accident for three vehicles. In count two, the plaintiff is making a claim under a policy issued to Wildman. The defendant also issued this policy (the Wildman policy). It provides $250,000 coverage per person and $500,000 per accident.
On June 16, 1995, the defendant filed a motion for summary CT Page 12077 judgment on the ground that Nicolari's vehicle is not underinsured for either the D'Arcangelo policy or the Wildman policy. The defendant filed a memorandum in support of its motion. The defendant also filed an affidavit from Joanne Ciriello,[3] which included copies of the policies in issue.
On June 27, 1995, the plaintiff filed a motion for partial summary judgment on the issue of liability only. The plaintiff requests a judgment on "the policies issued by [the] defendant and set forth in Exhibit B."[4] The plaintiff filed a memorandum in support of its motion. On June 29, 1995, the defendant filed a supplemental memorandum in support of its motion and in opposition to the plaintiff's motion.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barrett v. Danbury Hospital, 232 Conn. 242, 250, A.2d (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp. ,229 Conn. 99, 105, 639 A.2d 507 (1994).
In this case, the parties debate whether Nicolari's vehicle is underinsured under General Statutes § 38a-336(e).
 For the purposes of this section, an "underinsured motor vehicle" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this Section.
General Statutes § 38a-336(e). CT Page 12078
In its attempt to make sure that this statute is correctly interpreted, the court must proceed through a series of steps. See J. Berk M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.6.
The first step "in determining whether a motor vehicle is `underinsured' for purposes of § 38-175c, the aggregate of the limits of all such bonds and policies on thetortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage of the insured. . . . If the aggregate is less than the limits of liability in the uninsured motorist portion of the insured's policy, then the underinsurance coverage is activated." (Citation omitted; emphasis in original.) AmericanMotorist Ins. Co. v. Gould, 213 Conn. 625, 630, 569 A.2d 1105
(1990), overruled in part on other grounds, Covenant Ins. Co. v.Coon, 220 Conn. 30, 37-38, 594 A.2d 977 (1991).
Nicolari, the tortfeasor, had single limit liability, protection totalling $500,000. This amount is compared to the amount of uninsured motorist coverage for D'Arcangelo.
The second step is determining the amount of coverage for the alleged insured. "Thus, in making the initial determination of whether a vehicle is underinsured, § 38a-336 clearly states that the aggregate of the liability limits under all of the tortfeasorspolicies are to be compared with the uninsured motorist coverage limit of the policy against which a claim is made. . . . Consequently, the analysis directed by § 38a-336 requires a comparison between the aggregate of liability limits available to the victim against the underinsured motorist limits in each single
policy against which the victim has a claim." (Emphasis in original.) Covenant Ins. Co. v. Coon, 220 Conn. 30, 35-36,594 A.2d 977 (1991). See also, Farm City Ins. Co. v. Stevens,215 Conn. 157, 160-61, 574 A.2d 300 (1990).
The plaintiff is claiming that he is insured under two policies: one issued to August Wildman and the other issued to Florindo and Malfaldo D'Arcangelo. The Wildman policy provides underinsured motorist protection in the amount of $250,000 per person and $500,000 per accident.
The D'Arcangelo policy provides coverage for three vehicles. Each vehicle has coverage of $100,000 per person and $300,000 per accident. CT Page 12079
The next step is to determine whether the insured's policy is stacked[5] before a comparison to the tortfeasor's policy or each of the insured policies are compared individually. In Allstate Ins.Co. v. Lenda, 34 Conn. App. 444, 450, 642 A.2d 22, cert. denied,231 Conn. 906, A.2d (1994), the Appellate Court stated "the trial court properly stacked [the insured's] uninsured motorist coverage under his multiple vehicle policy in determining that [the tortfeasor's] motor vehicle was underinsured." Accordingly, under the D'Arcangelo policy, D'Arcangelo had available $300,000 per person and $900,000 per accident.[6]
The final step is comparing the Nicolari policy with the stacked policy of D'Arcangelo. The aggregate limit of Nicolari's policy is $500,000. The stacked limit of the D'Arcangelo policy is $300,000 per person and $900,000 per accident. The question is whether the $500,000 is compared to the per person limit or the per accident limit.
The defendant argues that Covenant Ins. Co. v. Coon, supra,220 Conn. 30, and American Motorist Ins. Co. v. Gould, supra,213 Conn. 625, indicate that the tortfeasor's limit must be compared against the per person limits of each underinsured motorist policy. The plaintiff contends that Stride v. Allstate Ins. Co.,12 Conn. L. Rptr. 142 (August 4, 1994) (Sullivan, W., J.) holds that the appropriate comparison is with the per accident limit. In its supplemental memorandum, the defendant argues against followingStride.
"Neither the text nor the legislative history of § 38a-336
addresses directly the circumstance in which the tortfeasor's liability insurance policy has two different liability limits."Covenant Ins. Co. v. Coon, supra, 220 Conn. 34.
The Supreme Court has stated that the intent of this statute is "to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party." American Motorist Ins. Co. v. Gould, supra,213 Conn. 631.
In accordance with Gould's statement of legislative policy, the court supposes that Nicolari's liability insurance was the same as the plaintiff's. Under this supposition, Nicolari's insurance is $300,000 per person and $900,000 per accident. The Supreme Court has interpreted General Statutes § 38a-336 "to conclude that the total of the per person limit is the amount of liability CT Page 12080 insurance available to the claimant." Covenant Ins. Co. v. Coon,
supra, 220 Conn. 34. Thus, under the fiction of Nicolari holding the same liability insurance as the plaintiff, the available benefit to the plaintiff is $300,000 because the plaintiff can collect only the per person limit, not the per accident limit. The legislative policy, which is stated above in Gould, compels the conclusion that Nicolari is not underinsured. If Nicolari had the same insurance as the plaintiff holds, the plaintiff could have recovered up to $300,000. The plaintiff's own policy has $300,000 underinsured limit. Therefore, Nicolari is not underinsured.
The defendant has moved for summary judgment on the second count also — the Wildman policy. Using the same analysis as was utilized above, Nicolari, the tortfeasor, has $500,000 of liability coverage. Under the per person limit of $250,000 in the Wildman policy, Nicolari is not underinsured. See again, Covenant Ins. Co.v. Coon, supra, 220 Conn. 34.
The defendant's motion for summary judgment on count one is granted. The defendant's motion for summary judgment on count two also granted. The plaintiff's motion for partial summary judgment is denied.