[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO VACATE AN ARBITRATION
This claim for underinsured motorist benefits arises out of an automobile accident which occurred on November 19, 1990. The defendant, Jane Callahan (Callahan) sustained injuries while CT Page 1889 riding as a passenger in a vehicle owned by Douglas Walsh (Walsh) and operated by Steven Lynch (Lynch). It is undisputed that the accident was caused by Lynch's negligent operation of the vehicle. At the time of the accident, Walsh was insured under an automobile liability policy issued by Erie Insurance Company (Erie), which provided liability limits of one hundred thousand dollars ($100,000) per person and three hundred thousand dollars ($300,000) per accident. Lynch was insured under an automobile liability policy issued by Amica Insurance Company (Amica) to his parents. This policy provided liability coverage in the amount of five hundred thousand dollars ($500,000) per accident.
Under the Erie policy, Callahan recovered one hundred thousand dollars ($100,000). Under the Amica policy, Callahan and another injured passenger equally shared a recovery of five hundred thousand dollars ($500,000). Callahan's recovery under both policies totalled three hundred and fifty thousand dollars ($350,000).
Callahan was insured under two separate automobile policies which were issued by Maryland Casualty (Maryland) to her parents and brother. These policies provided underinsured motorist limits in the amount of three hundred thousand dollars ($300,000) per accident for a total of six hundred thousand dollars ($600,000) in intrapolicy stacked coverage.[1]
Callahan submitted a claim for underinsured motorist benefits under the Maryland policies on the theory that she had exhausted the liability policy limits of both Erie and Amica.
In response to her claim, Maryland denied liability contending that the tortfeasor vehicle occupied by Callahan was not `underinsured' as defined in their policies. Maryland contends that the tortfeasor vehicle does not meet the policies' definition of an underinsured motor vehicle as the amount of insurance available to Callahan under the Erie and Amica policies; six hundred thousand dollars ($600,000) was not less than the limits of underinsured motorist coverage in Maryland policies against which her claim was made; six hundred thousand dollars ($600,000). The parties submitted this issue to arbitration on November 14, 1994.
At arbitration, Callahan argued that the term "uninsured motor vehicle" as used in the Maryland policies was ambiguous and should be interpreted to mean that only the policy actually CT Page 1890 purchased by the owner and issued to the tortfeasor vehicle should be considered in determining whether the vehicle was an "uninsured motor vehicle." Thus, Callahan argues that for the purpose of her Maryland claims, her recovery should be limited to the one hundred thousand dollar award she received from Erie; not the Amica award. Thus, her recovery of one hundred thousand dollars ($100,000) was not in excess of the limits set forth in the Maryland policies.
Maryland argued that the policies' definition of "uninsured motor vehicle" mirrors the language of General Statute §38a-336(b) which applies to all policies applicable to the accident, not the vehicle. Maryland further argued that the statute intended for trial courts/arbitrators to consider all available insurance policies on both motorists and vehicles, when determining whether a vehicle is under or uninsured.
A majority of the arbitrators resolved the coverage issue in favor of Callahan concluding that Maryland's uninsured policy provisions were triggered and rendered a net award in the amount of three hundred and forty six thousand three hundred and thirty three dollars and thirty three cents ($346,333.33) to be shared pro rata by the two Maryland policies.
On July 24, 1995, Maryland filed an application to vacate the arbitration award and a memorandum in support. On September 25, 1995, Callahan filed an Application to Confirm the Arbitration Award and a memorandum in support.
"When reviewing an arbitration panel's factual findings considering underinsured motorist coverage, our courts' standard of review is whether the arbitrators' findings are supported by substantial evidence. . . . In determining whether there was substantial evidence to support the arbitrators' findings, the trial court's role was not to draw inferences from the evidence presented to the arbitrators, but rather to discover whether the arbitrators' findings of fact were reasonable. . . . The trial court should not determine whether it would have found as the arbitrators did, but whether the arbitrators' finding was supported by substantial evidence." (Citations omitted.) Boyce v.State Farm Insur. Co., 34 Conn. App. 40, 43-44, 640 A.2d 135
(1994).
Section 38a-336 (b) of the General Statutes states, "An insurance company shall be obligated to make payment to its CT Page 1891 insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. The limitation on the total amount of recovery from all policies shall not apply to underinsured motorist conversion coverage purchased pursuant to section § 38a-336a."
Section (e) of § 38a-336 defines an underinsured vehicle as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."
Courts have held that statutes and regulations which apply to uninsured motorist coverage equally apply to underinsured motorist coverage. Buell v. American Universal Ins. Co.,224 Conn. 766, 769 n. 1, 621 A.2d 262 (1993); Lumbermens MutualCasualty Co. v. Huntley, 223 Conn. 22, 28 n. 9, 610 A.2d 1292
(1992); Nationwide Ins. Co. v. Gode, 187 Conn. 386, 399-400,446 A.2d 1059 (1982). The policy language at issue[2] defines an uninsured motor vehicle as "a land motor vehicle or trailer of any type: for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage applicable to each vehicle insured for this coverage under this policy." Maryland Policies Numbered TP 43982719 (Robert and Dorothy Callahan) and TP 93643013 (Patrick Callahan), Amendment of Policy Provisions — Connecticut, § II, p. 1.
Callahan argues that the policies' use of the term "applicable" refers "back to the vehicle, not its operator . . . [t]he Amica Policy was "applicable" not to the Walsh vehicle, but to the person who happened to be driving it on the night of the accident." Memorandum to Confirm Award, p. 12. While Callahan recognizes Maryland's interpretation of the term "applicable" to refer to all available policies, Callahan argues that the phrase CT Page 1892 is ambiguous in that "it is capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire written agreement." Memorandum to Confirm Award, p. 14. Thus, "[u]nder the doctrine of contra proferentem, the ambiguity should be construed against the respondent, who drafted the policies." Memorandum to Confirm Award, p. 14.
In reaching its decision, the arbitrators' "disagree[d] with the reasoning of Covenant Ins. Co. v. Coon. . . . and the resultant inequities occasioned by it [but] nevertheless adhere[d] to its edict and measure[d] each underinsured policy separately against the liability coverage of the tortfeasing vehicle." (Citations omitted.) Decision of Arbitrators, p. 4. The arbitrators held that the Maryland policies and § 38a-336 (d) specifically referred to an underinsured "vehicle," not an underinsured "motorist," thus any recovery from the insurance on a motorist should not be considered when determining whether a vehicle is underinsured. This interpretation led to their decision that, "the only policy applicable to the vehicle was the Erie policy." Decision of Arbitrators, p. 5.
The arbitrators distinguished the holding of AmericanMotorists Ins. Co. v. Gould, 213 Conn. 615, 569 A.2d 1105 (1990), overruled in part on other grounds, Covenant Ins. Co. v. Coon,220 Conn. 30, 37, 594 A.2d 977 (1991), on the ground that the term "excess policy" could have referred to a single insurance policy on the vehicle with `dual' or `umbrella' coverage on the motorist. "Such a policy would, of course, be deemed to be one that covered the vehicle." Decision of Arbitrators, p. 6. In Coon, the court held that in determining a tortfeasor's liability limit, "for the purposes of the § 38a-336 (d) comparison, we must examine the amount of liability insurance that is available to the victims." Id., 34.
The arbitrators' further held that the use of the term "all" as found in § 38a-336 (d) referred to "[such] instances where, in addition to the basic automobile policy, an umbrella, or some other type of excess policy, also insures the vehicle. The use of the word "all" does not necessarily mean that the legislatures or the underwriters intended to include the policy of a non-owner operator, written on another vehicle." Decision of Arbitrators, p. 7.
The arbitrators' interpretation of § 38a-336 (b) was CT Page 1893 unreasonable in light of the recent Supreme Court holding inCiarelli v. Commercial Union Ins. Cos., 234 Conn. 807 (1995). On very similar facts, the court affirmed the decision of the arbitrators and the trial court which concluded that General Statutes § 38a-336 (b) requires the plaintiff to exhaust the policy limits of both the owner and the operator of the tortfeasor vehicle. The court specifically held that, "[t]he word "all" and the plural words "bonds" and "policies" found in §38a-336 (b) would be rendered meaningless if not read to require exhaustion of all the policies applicable to the underinsured vehicle at the time of the accident. The language of the statute clearly anticipates circumstances under which coverage by more than one liability policy will be available, and a case such as this, in which there is a policy covering the automobile, namely, the [Erie] policy and a different policy covering the liability of the operator, namely, the [Amica] policy, is the paradigm that the statute contemplates. In Continental Ins. Co. v. Cebe-Habersky,
we concluded that a single policy is exhausted only when the limit of coverage actually has been paid to the claimant. Accordingly, if the plaintiff did not receive payment of the full policy limits of the applicable policies, namely, the owner's policy and the operator's policy, she cannot prevail on a claim under her underinsured motorist policy. Citations omitted.) Id., 811.
In her memorandum, Callahan cites to a number of cases which hold that a claimant is required to exhaust the insurance coverage of only one tortfeasor. Most of these cases either hold or cite as authority, the Supreme Court's holding in GeneralAccident Ins. Co. v. Wheeler, 221 Conn. 206, 603 A.2d 385 (1992). In Ciarelli, supra, 234 Conn. 807, the court discusses its rationale regarding Wheeler and the scope of its authority with respect to this issue. "We did not envision the application of either our holding or our language in Wheeler to a situation concerning a single tort claim involving a single at fault vehicle, where the operator and owner of that vehicle each had a liability policy applicable to the accident at issue. . . . We did not intend Wheeler to relieve the burden on the plaintiff to exhaust the limits of all policies applicable to the underinsured vehicle at the time of the accident, simply because each policy was held by a different person." Id., 813-14.
Thus, in light of this holding, in order to determine whether a vehicle is underinsured pursuant to § 38a-336 (b), the panel should have considered the recovery available under both CT Page 1894 the Erie and the Amica policies. Their failure to do so was in contravention of law and therefore, unreasonable.
The Supreme Court, in the recently decided cases of Florestalv. Government Employees Ins. Co., 236 Conn. 299 (1996) and Lashv. Aetna Casualty Surety Company, 236 Conn. 318 (1996)[3], seized the opportunity to clarify the law in this area and stands as controlling authority on this issue. The Florestal case specifically addresses the issue of whether a party injured in a motor vehicle accident must exhaust the liability of all available insurance policies and whether the amount available or the amount recouped should be considered in determining underinsured status pursuant to § 38a-336.
In Florestal, the court affirmed the trial court decision and upheld the construction of § 38a-336 (e) as adopted by the Supreme Court in American Motorists Ins. Co. v. Gould, supra,213 Conn. 625. The court reaffirmed its holdings in Gould andCoon[4] and reemphasized that under Connecticut law, "a vehicle is underinsured only if the total liability limits of the tortfeasor's policy are less than the limits of the claimant's underinsured motorist coverage, regardless of whether some or all of the tortfeasor's coverage has been exhausted due to payments to other injured claimants." Id., 302.
On very similar facts to the present case, in Florestal, the plaintiffs sustained injuries from a traffic accident. The driver of the tortfeasor vehicle was insured under a liability policy that provided coverage of up to twenty thousand dollars ($20,000) per person and forty thousand dollars per accident ($40,000). The tortfeasor's liability insurer paid twenty thousand dollars to a claimant not a party to the action and the remaining twenty thousand dollars was evenly divided among the two plaintiffs and two other claimants. As their damages exceeded their recovery, the plaintiffs filed a claim with their insurer which provided underinsured motorist coverage in the amount of twenty thousand dollars ($20,000) per person and forty thousand dollars per accident ($40,000). The insurer denied coverage on the grounds that the policy limits of the plaintiff's underinsured motorist coverage did not exceed the limits of the tortfeasor's liability policy and therefore the tortfeasor was not underinsured within the meaning of § 38a-336. The claims were submitted to arbitration where the arbitration panel found for the plaintiffs. On appeal, the trial court, relying on the holding in Gould, supra, 213 Conn. 625, granted the defendant-insurer's CT Page 1895 applications to vacate the arbitration awards.
The plaintiffs in Florestal asked the court to reconsider and overrule its holding in Gould in favor of the construction of § 38a-336 (e) as adopted by the arbitrator.
The court in Florestal "[i]n reversing the judgment of the trial court, [rejected] the claimaint's argument that only the amount actually paid to her under the tortfeasor's liability policy should be considered in determining whether the operator of the automobile was underinsured. [It] concluded, rather, that in light of the plain language of § 38a-336 and the construction afforded similarly worded statutes in other jurisdictions, underinsured motorist benefits are not recoverable under our statutory scheme unless the limits of the underinsured motorist coverage available to the claimant exceed the total amount of liability insurance available to satisfy claims against the tortfeasor." Id., 304. "The fact that [the tortfeasor's] liability coverage has. . . . been exhausted because of multiple claims does not change the effect of the statute in activating uninsured motorist coverage only when the liability insurance of the tortfeasor is less in amount. . . . Moreover, the plaintiff's argument finds no support in the legislative history of §38a-336, which is devoid of any indication that the legislature intended for subsection (e) to be construed in a manner contrary to its plain language." (Citations omitted.) Id., 306.
In Covenant Ins. Co. v. Coon, supra, 220 Conn. 30, 36, the court held that, "[t]he application of § 38a-336 requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) calculating the amount of the actual award due the victim."
Thus, the liability coverage available to Callahan in the amount of five hundred thousand dollars ($500,000) under the Amica policy should have been considered by the arbitration panel in determining whether the tortfeasor vehicle was underinsured. The fact that Callahan recovered only two hundred and fifty thousand dollars ($250,000) of the available ($500,000) is immaterial. "Although certain inequities may arise in some underinsured motorist cases involving multiple claimants, redress from any such unfairness must be sought from the legislature, not from the courts, in light of the clearly expressed intent of the legislature. . . . It is apparent, therefore, that [Callahan is] denied full recovery in this case not because the tortfeasor was CT Page 1896 inadequately insured but, rather, because there were multiple claimants who sought to recover under the tortfeasor's liability policy. Thus, we are constrained to adhere to our holding inGould despite the unfortunate fact that, under Gould, some accident victims with underinsured motorist coverage will be denied satisfactory compensation for their injuries."(Citations omitted.) Florestal, supra, 236 Conn. 299, 310-311.
Since the holding of the arbitrators is contrary to law, the award of the panel is vacated.
Hale, J.