[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS ADDRESSED TO ARBITRATION PROCEEDING
Claimant, Doris Collimore, was injured in an automobile accident which occurred on June 18, 1987 in Bridgeport, Connecticut. She was one of a number of passengers in an automobile which was operated by June Davis. The accident was due solely to the negligence of Davis. The Davis vehicle was covered by a policy with a limit of $100,000.00 per person and $200,000.00 per accident. Claimant received the sum of $20,000.00 in settlement of her claim with the balance going to the other passengers injured in the accident.
Claimant was also insured under two underinsured/uninsured motorists policies issued by respondent, Liberty Mutual Insurance Company totalling $150,000.00. Pursuant to the provisions of these underinsured motorists policies, the parties went to binding arbitration before a panel of three arbitrators.
After hearing, the arbitrators found that claimant suffered damages which "exceed the sum of $50,000.00." Two of the three arbitrators decided that the $150,000.00 coverage should be reduced by allowing respondent a credit of $100,000.00 representing the total sums paid to the passengers in the vehicle even though claimant received only $20,000.00. The $100,000.00 credit was allowed because of the arbitrators interpretation of the ruling in American Motorists Ins. Co. v. Gould, 213 Conn. 625 (1990). One arbitrator dissented only as to the matter of credit, indicating that respondent was not entitled to a $100,000.00 credit as it did not pay that sum to the claimant.
Claimant filed an application to modify and/or vacate in part the arbitration award. Claimant requested that the award be vacated or modified in part to increase the amount of damages found and, further, to eliminate the $100,000.00 credit allowed by the arbitrators.
Respondent filed an answer to the application of plaintiff and asked that the award be confirmed. Respondent's counsel conceded that $50,000.00 had been paid to claimant, without prejudice, pursuant to the award. CT Page 9325
After the award and respondent's motion to confirm, the Supreme Court decided the case of Covenant Ins. Co. v. Coon, et al, 220 Conn. 30 (1991). That court held, at page 35, that:
 In making the initial determination of whether a tortfeasor's vehicle is underinsured, however, section 38a-336(d) states that: "`underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all . . . policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorists portion of the policy against which claim is made. . . . (Emphasis in original.)
In other words, in determining the threshold question of whether or not a vehicle is underinsured, the comparison is between the total of the liability policies applicable at the time of the accident as compared to each one of the uninsured motorists policies against which a claim is made. In the circumstances here, that would have required a comparison of the $100,000.00 liability of the policy on the tortfeasor's vehicle to each of the claimant's policies. Here the claimant had one policy in the sum of $50,000.00 and another in the sum of $100,000.00 under which she was covered. Comparing the $100,000.00 tortfeasor policy to each of those would have resulted, under Coon, in a determination that the vehicle of June Davis was not underinsured. In those circumstances, plaintiff would not have been entitled to a recovery.
At oral argument, respondent claimed that the Coon case should result in the award being vacated as claimant was, in fact, in a vehicle which was not underinsured. Claimant argued that respondent had waived any such claim by filing an application to confirm the award and, in addition, paying the claimant the sum of $50,000.00.
The court agrees with claimant's position. Under Connecticut General Statutes 52-420(b) an application to vacate an award must be made within thirty (30) days after the award is rendered. In addition, the actions of the respondent constitute a waiver of that claim.
CT Page 9326 I. TO WHAT CREDIT IS RESPONDENT ENTITLED
The arbitrators cited the Gould case, supra, in support of their decision to allow respondent a credit of $100,000.00 even though claimant received only $20,000.00. Under American Universal Ins. Co. v. DelGreco, 205 Conn. 178,191 (1987), the court "must conduct a de novo view of the interpretation and application of the law by the arbitrators."
In the Gould case the claimant and three other persons were injured while passengers in a vehicle insured by American Motorists ("American"). The car was involved in a one car accident. The American policy was in the amount of $100,000.00 and there was an additional Chubb Insurance Company policy in the amount of $40,000.00 for a total of $140,000.00 of liability coverage. The American policy also provided for $80,000.00 of uninsured motorists coverage. Claimant had an additional $40,000.00 of uninsured motorists coverage available to her through vehicles owned by members of her family. The $140,000.00 was paid to the injured claimants with the claimant Gould receiving the sum of $21,000.00. The arbitrators found that the claimant Gould had sustained damages of $35,000.00, deducted the $21,000.00 she had already collected and awarded her $14,000.00 in underinsured motorists benefits.
The Gould court held that the tortfeasor's vehicle was not, in fact, underinsured as the total of $140,000.00 in liability coverage exceeded the $120,000.00 in uninsured motorists coverage. The court also discussed the matter of what credit, if any, would be appropriate. The American policy provided that any underinsured/uninsured motorists benefits were to be reduced by any payments under the liability portion of the policy, i.e., the $140,000.00, because the uninsured motorists portion of the policy said that all sums paid pursuant to the liability coverage reduced the insured motorists coverage. The court held that that reduction would include payments made to others as well as the $21,000.00 paid to the claimant Gould.
The claimant in the instant case argues that the Gould ruling simply does not apply under the circumstances here. The court agrees. The Gould decision turned on the policy language of the tortfeasor's insurance policy as a claim was being made under the underinsured motorists provision of that policy. In the instant case the claim is being made under the claimant's own policy not the tortfeasor's. The language CT Page 9327 relied on in Gould under that particular policy simply does not apply here.
The underinsured/uninsured motorists provision of the subject policy provides as follows:
 The limit of liability shall be reduced by all sums:
 1. paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under part A and . . .
Part A refers to the liability portion of the subject insurance policy. Claimant in the instant case was paid nothing under the liability portion of the subject insurance policy; whereas in the Gould case the claimants had received $140,000.00 in total under the liability provision of that policy. The "all sums" referred to in the Gould case referred to all monies paid under the part A liability portion of that policy. In the instant case "all sums" also refers to payments under the liability portion of the policy. As there were no such payments, no credit should have been allowed under the rationale of the Gould case.
The respondent's claim that the Gould case sets out the legislative intent to put an injured person in the same position as if the tortfeasor carried the same amount of liability insurance as the victim's uninsured motorists coverage is unavailing. That rationale is used only to determine if the tortfeasor's vehicle is underinsured. The amount of any credit or setoff, such as the credit at issue here, is subject to a different rationale. That rationale basically is to prevent double compensation or over compensation of a victim. After it is determined that a tortfeasor's vehicle is, in fact, underinsured, uninsured motorists policies are accessed to make victims whole, yet avoid duplicate payment within the limits of the uninsured motorists coverage. The Gould case did not have to address setoffs to an insurer under another uninsured motorists policy as Nationwide paid the amount awarded against it and did not appeal.
Defendant cites Billings v. State Farm Mutual Auto CT Page 9328 Ins. Co., 680 F. Sup. 778 (E.D. VA. 1988), as a case where the claimant's underinsured motorists coverage of $50,000.00 was reduced by the $25,000.00 liability limit of the tortfeasor's insurance policy even though the claimant had received only part of the $25,000.00 liability coverage. In the Billings case the claim was made under the liability and underinsured motorists provisions of the same policy, the same situation as pertained in the Gould case.
The underinsured motorists policy at issue here clearly states that the underinsured motorists coverage shall be reduced by sums paid under the liability provisions of the policy itself. As there were no such payments, the plain language of the policy dictates that there shall be no reduction in the underinsured motorists coverage.
The reason for the statutory scheme becomes clear when one compares an uninsured tortfeasor with an underinsured tortfeasor. In the instant case if the tortfeasor's vehicle had had no insurance at all, claimant Gould could have collected a maximum of $150,000.00 under her own uninsured motorists policies. Here, the tortfeasor was underinsured and the statutory scheme and the policy language allow the claimant to collect no more than $150,000.00 in toto. That is because the policy states that the underinsured coverage shall be reduced because of payments made by or on behalf of persons who may be legally responsible. That would allow respondent here a credit for the $20,000.00 paid on behalf of the tortfeasor. This would then allow claimant to collect no more than $130,000.00 under the underinsured motorists provisions of her own policies. In other words, claimant in the instant case would end up no better off when the tortfeasor is underinsured as opposed to being uninsured. For this reason, claimant's contention that she has suffered damages in excess of $170,000.00 and, therefore, should be allowed to collect the full $150,000.00 under the underinsured motorists policies is not persuasive. Such a result would put her in a better position than she would have been in had the tortfeasor's vehicle been uninsured.
This claim also ignores the plain language of the insurance contract. Plaintiff bought or is an insured under policies with a limit on the company's obligation to pay. That limit is not $150,000.00 necessarily, but rather is $150,000.00 less the allowable credits listed in the policy. One of those credits is for payments made by or on behalf of legally CT Page 9329 responsible parties. That sum here is $20,000.00. If claimant or the persons who purchased the uninsured motorists policies wished higher coverage limits, they could have purchased such higher limits. In any event, claimant will receive the exact coverage called for in the policy by the allowance of the $20,000.00 credit.
Connecticut General Statutes 38a-336(b) states:
 An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorists coverage . . . but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorists coverage, exceed the limits of the insured's uninsured motorists coverage. (Emphasis supplied.)
Under that statute, the $150,000.00 is the maximum recovery available to the claimant from all policies; her own underinsured motorists policies as well as the tortfeasor's payment. Covenant Ins. Co. v. Coon, 220 Conn. 30, 37-38 (1991).
II. CLAIMANT'S REMEDY
Claimant has asked the court to determine the value of the case based on the exhibits offered into evidence. Connecticut General Statutes 52-418 provides for the court to vacate an award under subsection 4 which says:
 If the arbitrators have . . . so imperfectly executed [their powers] that a neutral, final and definite award upon the subject matter admitted was not made.
The court has conducted a de novo review of legal rulings by the arbitrators pursuant to DelGreco, supra. The arbitrators improperly allowed a $100,000.00 credit and did not set a value on the case. They found only that claimant's damages exceeded $50,000.00. This is not a sufficiently definite award.
The court vacates the award in part and orders the parties to submit to the arbitration panel the question of the CT Page 9330 actual value of the claimant's case. Once that value is determined, the arbitrators are to apply a credit of $20,000.00 plus $50,000.00 for the payment already made and award the claimant any balance over the total credits of $70,000.00. By way of illustration only, if the arbitrators were to find the claimant's damages to be in the amount of $70,000.00, with the allowable credits there would be no further award. On the other hand, if the arbitrators were to find that the claimant sustained damages of $150,000.00, the maximum allowable, then the credit would be $70,000.00 and the award would be an additional $80,000.00.
E. EUGENE SPEAR, JUDGE