******************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopin-
ion motions and petitions for certification is the "offi-
cially released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports, the latest
version is to be considered authoritative.

The syllabus and procedural history accompanying
an opinion that appear in the Connecticut Law Jour-
nal and subsequently in the Connecticut Reports or
Connecticut Appellate Reports are copyrighted by the
Secretary of the State, State of Connecticut, and may
not be reproduced or distributed without the express
written permission of the Commission on Official Legal
Publications, Judicial Branch, State of Connecticut.

******************************************

## CAITLYN BOUCHARD ET AL. *v.* CHEYANNE E. WHEELER ET AL.
### (AC 45627)

Elgo, Moll and Suarez, Js.

*Syllabus*

Pursuant to statute (§ 38a-336 (e)), an underinsured motor vehicle is a motor vehicle with respect to which the sum of the limits of liability under insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which the claim is made.

The plaintiffs, who sustained injuries in a motor vehicle accident, sought to recover underinsured motorist benefits under an automobile insurance policy issued to them by the defendant S Co. At the time of the accident, the plaintiffs' policy and the insurance policy of the defendant tortfeasors each provided liability coverage of up to $100,000 per person and $300,000 per accident. The tortfeasors' insurer thereafter made payments to the plaintiffs and to others injured in the accident that exhausted the $300,000 per accident limit of the tortfeasors' policy. After the plaintiffs settled their claims with the tortfeasors and withdrew their action as against them, S Co. moved for summary judgment, claiming that the plaintiffs were not entitled to underinsured motorist benefits because, under our Supreme Court's precedent, their underinsured motorist coverage did not exceed the liability limits of the tortfeasors' policy. The plaintiffs contended that the tortfeasors' vehicle was an underinsured motor vehicle and that they were entitled to underinsured motorist benefits because a legislative amendment (P.A. 14-20, § 1) to the underinsured motorist statute (§ 38a-336) had overruled that precedent. The trial court denied S Co.'s motion for summary judgment, concluding that the plaintiffs were entitled to underinsured motorist benefits because the total recovery they obtained from the tortfeasors was less than the $300,000 per accident limit in the tortfeasors' policy. The court reasoned that P.A. 14-20 required that the proper comparison of the applicable limits of the policies of the tortfeasor and the claimant must be between the amount of liability insurance actually available to a plaintiff under a tortfeasor's policy, after other claimants under that policy are paid, with the amount of a plaintiff's underinsured motorist coverage. The plaintiffs and S Co. then entered into a stipulation that reserved S Co.'s right to appeal the propriety of the court's denial of its motion for summary judgment and in which they agreed, inter alia, that the plaintiffs' policy and the tortfeasors' policy contained identical coverage limits and that the $300,000 per accident limit of liability coverage in the

tortfeasors' policy had been exhausted. The court then rendered judgment for the plaintiffs in accordance with the parties' stipulation, from which S Co. appealed to this court. *Held* that the trial court improperly denied S Co.'s motion for summary judgment, as the tortfeasors' vehicle plainly was not an underinsured motor vehicle within the meaning of that term in § 38a-336 (e) because their underinsured motorist coverage was not less than, but identical to, the plaintiffs' liability coverage: although the language of § 38a-336, as amended by P.A. 14-20, was ambiguous as applied to the facts of this case, this court determined that the legislature, in P.A. 14-20, did not intend to alter the definition of an underinsured motor vehicle in § 38a-336 (e) or to overrule the precedent of our Supreme Court concerning that definition but, rather, intended to clarify that an insurer may offset from its insured's underinsured motorist coverage, pursuant to § 38a-336 and the applicable regulation (§ 38a-336-4), only that amount their insured actually received from the tortfeasor's coverage for bodily injury; moreover, this court was hard-pressed to conclude that the legislature intended to amend the definition of an underinsured motor vehicle in § 38a-336 (e) and overrule sub silentio a substantial body of our Supreme Court's precedent pertaining to that definition, as this court was required to presume that the legislature was aware that the court repeatedly has held that the application of § 38a-336 involves separate inquiries involving, first, whether the tortfeasor's vehicle is underinsured pursuant to § 38a-336 (e), which requires a comparison of the coverage limits contained in the respective insurance policies of the tortfeasor and the claimant, and, if so, the calculation of the amount, if any, to be paid to the claimant; furthermore, the legislative history of P.A. 14-20 indicated that it was enacted to preclude the practice condoned by this court in *Allstate Ins. Co.* v. *Lenda* (34 Conn. App. 444) that an insurance carrier could offset underinsured motorist benefits owed to its insured by all amounts paid by or on behalf of the tortfeasor to the insured and others for bodily injury and property damage; additionally, although the plaintiffs contended that § 38a-336 is a remedial statute that must be construed liberally to protect people injured by uninsured motorists, our Supreme Court has expressly declined to apply that maxim to decide whether a vehicle met the statutory definition of an underinsured motor vehicle.

Argued October 3, 2023—officially released April 9, 2024

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Britain, where Safeco Insurance Company was

cited in as a defendant; thereafter, the action was withdrawn as against the named defendant et al.; subsequently, the court, *Hon. Joseph M. Shortall*, judge trial referee, denied the motion for summary judgment filed by the defendant Safeco Insurance Company; thereafter, the court, *Morgan, J.*, rendered judgment for the plaintiffs in accordance with the parties' stipulation, from which the defendant Safeco Insurance Company appealed to this court. *Reversed*; *judgment directed.*

*Philip T. Newbury, Jr.*, for the appellant (defendant Safeco Insurance Company).

*James J. Walker*, for the appellees (plaintiffs).

*Opinion*

ELGO, J. This case concerns the proper application of General Statutes § 38a-336, commonly known as the underinsured motorist statute. See *Tannone* v. *Amica Mutual Ins. Co.*, 329 Conn. 665, 676, 189 A.3d 99 (2018). The defendant Safeco Insurance Company[1] appeals from the judgment of the trial court rendered in accordance with the stipulation that it entered into with the plaintiffs Caitlyn Bouchard, Kayla Bouchard and Madalyn Bouchard.[2] On appeal, the defendant claims that the court improperly concluded that the automobile in question constituted an underinsured motor vehicle, as that term is used in § 38a-336. We agree and, accordingly, reverse the judgment of the trial court.

---

[1] Although Cheyanne E. Wheeler and Russell Wheeler also were named as defendants, the plaintiffs withdrew their complaint against them approximately seven months after this action commenced. We therefore refer to Safeco Insurance Company as the defendant in this opinion.

[2] Caitlyn Bouchard appeared before the court in both her individual capacity and as parent and next friend of Kayla Bouchard and Madalyn Bouchard. Although Caitlyn Bouchard also appeared on behalf of the plaintiff Tristan Bouchard, as parent and next friend, Tristan Bouchard was not a party to the stipulation and is not participating in this appeal.

For clarity, we refer to Caitlyn Bouchard, Kayla Bouchard and Madalyn Bouchard individually by first name and collectively as the plaintiffs.

The relevant facts are not in dispute. On February 16, 2018, Caitlyn was operating a vehicle insured by the defendant on East Main Street in Thomaston. Among her passengers were her daughters, Kayla and Madalyn. At that time, Cheyanne E. Wheeler was operating a vehicle owned by Russell Wheeler (Wheeler vehicle). As she approached an intersection, Cheyanne E. Wheeler negligently turned the Wheeler vehicle into Caitlyn's lane of traffic, causing a collision that injured the plaintiffs and other individuals.

The plaintiffs thereafter commenced the present action, alleging negligence and recklessness on the part of Cheyanne E. Wheeler, as well as family car doctrine liability; see *Matthiessen* v. *Vanech*, 266 Conn. 822, 836 n.14, 836 A.2d 394 (2003); on the part of Russell Wheeler pursuant to General Statutes § 52-182. In addition, the plaintiffs alleged that, at all relevant times, the Wheeler vehicle was an underinsured motor vehicle and that they were entitled to underinsured motorist benefits from the defendant, their insurer. After the plaintiffs settled their claims with the tortfeasors' insurer and withdrew their action against Cheyanne E. Wheeler and Russell Wheeler, the defendant moved for summary judgment on the ground that "the plaintiffs are not entitled to underinsured benefits [because their] underinsured coverage is equal to the tortfeasor's liability coverage."

In its January 5, 2021 memorandum of decision, the court, *Hon. Joseph M. Shortall*, judge trial referee, acknowledged the precedent of our Supreme Court holding that a motor vehicle is not underinsured where the liability limits in the tortfeasor's policy are equal to or greater than the underinsured benefits in the claimant's policy. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 87–91, 743 A.2d 156 (1999); *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 301, 673 A.2d 474 (1996); *American*

*Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 632–33, 569 A.2d 1105 (1990), overruled in part on other grounds by *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991). The court nevertheless concluded that a 2014 amendment to § 38a-336 (b) legislatively overruled that Supreme Court precedent. Whereas the pertinent inquiry under that precedent entailed comparison of the applicable limits of the respective insurance policies of the tortfeasor and the claimant, the trial court held that, following passage of No. 14-20, § 1, of the 2014 Public Acts (P.A. 14-20), "the comparison must be between the amount of liability insurance *actually available* to the plaintiff under the tortfeasor's liability insurance policy, after other claimants under that policy are paid, with the amount of the plaintiff's underinsured motorist coverage." (Emphasis in original.) Because the total recovery obtained by the plaintiffs was less than the $300,000 per accident limit for coverage under the automobile policy issued by the defendant (Bouchard policy), the court concluded that they were entitled to additional underinsured motorist benefits. For that reason, the court denied the defendant's motion for summary judgment.

The parties thereafter entered into a stipulated judgment that reserved the defendant's right to appeal the propriety of the court's denial of its motion for summary judgment. That stipulation set forth the following additional facts. At the time of the accident, the Wheeler vehicle was insured for automobile liability by State Farm Mutual Automobile Insurance Company (Wheeler policy). The Wheeler policy provided coverage of up to $100,000 per person and $300,000 per accident. State Farm Mutual Automobile Insurance Company subsequently made payments to the plaintiffs and other individuals injured in the accident, thereby exhausting the $300,000 per accident limit of the Wheeler policy.[3]

---

[3] The stipulated judgment indicates that State Farm Mutual Automobile Insurance Company paid "$80,500 to settle the claim by Caitlyn," "$60,000

At all relevant times, the plaintiffs were insured under the Bouchard policy. As the parties noted in their stipulation, "the uninsured and underinsured motorist limits of the [Bouchard] policy are $100,000 per person and $300,000 per accident *without* conversion coverage . . . ."[4] (Emphasis added.) It therefore is undisputed that the Wheeler policy and the Bouchard policy contain identical coverage limits.

By order dated June 27, 2022, the court rendered judgment in accordance with the stipulation of the parties. The defendant then commenced this timely appeal.

The issue presented in this appeal is whether the court correctly determined that the Wheeler vehicle constituted an underinsured motor vehicle, as that term is used in § 38a-336. The proper construction of § 38a-336 presents a question of law, over which our review is

to settle the claim by Kayla," "$50,000 to settle the claim by Madalyn," and "$109,500 to settle claims by additional injured persons who are not parties to this agreement . . . ."

[4] In their operative complaint, the plaintiffs alleged that the Bouchard policy "provided underinsured motorist conversion coverage." They nevertheless agreed, in the stipulated judgment entered into with the defendant and approved by the court, that the Bouchard policy did *not* provide conversion coverage. The record before us contains a copy of the Bouchard policy, which was appended as an exhibit to the defendant's memorandum of law in support of its motion for summary judgment. That exhibit confirms that the Bouchard policy did not provide underinsured motorist conversion coverage.

"[C]onversion coverage is an option [that] is available for an additional premium to consumers who wish to purchase it in lieu of standard underinsured motorist coverage under § 38a-336 [and] provides enhanced protection to victims of underinsured motorists . . . . In contrast to traditional underinsured motorist coverage, underinsured motorist conversion coverage is not reduced by the amount of any payment received by or on behalf of the tortfeasor or a third party. . . . As our Supreme Court succinctly explained, conversion coverage . . . means that any [uninsured] motorist benefits [a plaintiff] is entitled to from the defendant will not be reduced by the amount recovered from the legally responsible parties." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Russbach* v. *Yanez-Ventura*, 213 Conn. App. 77, 103–104, 277 A.3d 874, cert. denied, 345 Conn. 902, 282 A.3d 465 (2022).

plenary. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 84.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 83, 282 A.3d 1253 (2022). Pursuant to General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

I

In ascertaining the proper meaning of § 38a-336, we do not write on a blank slate, but rather are guided by our Supreme Court's prior decisions construing that statute. See *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 173, 101 A.3d 200 (2014); *New England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013). In *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 625, the Supreme Court addressed the question of whether a tortfeasor's vehicle constituted an underinsured motor vehicle, as that term was used in General Statutes (Rev. to 1983) § 38-175c, the precursor to § 38a-336. The court first noted that the statute contained an explicit definition of the term "underinsured motor vehicle"; id., 629; and explained that § 38-175c "requires that the insured's *uninsured motorist coverage limits* be greater than

the total liability limits for a [tortfeasor's] vehicle before it may be deemed underinsured." (Emphasis in original.) Id., 631. The court then continued: "[T]he legislative objective was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage. Where an underinsured motor vehicle is statutorily defined as an insured motor vehicle with applicable liability limits less in amount than the injured person's uninsured motorist's limits, it is clear that the underinsured motorist coverage is not applicable if the insured person's uninsured motorist limits are equal to, or less than, the tortfeasor's liability limits." (Internal quotation marks omitted.) Id., 632.

Six years later, the Supreme Court was asked to overrule its decision in *Gould*. In *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 301, the court declined to do so and expressly reaffirmed its holding in *Gould*. The plaintiffs in *Florestal* argued that "a strict construction of [the definition of 'underinsured motor vehicle' set forth in] § 38a-336 (e) is inconsistent with the legislative purpose underlying the enactment of our uninsured and underinsured motorist statutes, which, they assert, is to ensure 'that automobile accident victims receive fair, just and reasonable compensation for their injuries.'" Id., 305. The court acknowledged that "broadly stated . . . the purpose of underinsured motorist coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) Id. The court continued: "It does not follow, however, that the legislature, in providing for underinsured motorist coverage, necessarily intended to guarantee that each and every accident victim would be fully, or even adequately, compensated

for injuries caused by an underinsured motorist. . . . [*T*]*he legislative objective* [*in enacting § 38a-336*] *was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage.*" (Emphasis in original; internal quotation marks omitted.) Id., 306. The Supreme Court also emphasized that "the purpose of underinsured motorist coverage is neither to guarantee full compensation for a claimant's injuries nor to ensure that the claimant will be eligible to receive the maximum payment available under any applicable policy. Indeed, underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . ." (Internal quotation marks omitted.) Id., 310.

Notably, the tortfeasor's automobile liability policy in *Florestal*—like the Wheeler policy here—was exhausted by payment to multiple claimants. Id., 301. For purposes of determining whether the tortfeasor's vehicle was an underinsured motor vehicle under § 38a-336, our Supreme Court held that this was a distinction without a difference, stating: "The fact that [the tortfeasor's] liability coverage has . . . been exhausted because of multiple claims does not change the effect of the statute in activating uninsured motorist coverage only when the liability insurance of the tortfeasor is less in amount." (Internal quotation marks omitted.) Id., 306.

The court further recognized that, "several years after [its] decision in *Gould*, the legislature enacted the Automobile Insurance Reform Act; Public Acts 1993, No. 93-297; which, among other things, requires any insurance company licensed to sell automobile liability insurance in this state to offer a type of underinsured motorist coverage known as underinsured motorist conversion coverage . . . . This option, which is available *for an*

*additional premium* to consumers who wish to purchase it *in lieu of standard underinsured motorist coverage under § 38a-336*, provides enhanced protection to victims of underinsured motorists because, in contrast to coverage under § 38a-336, it is activated when the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the *fair, just and reasonable damages of the covered person.* . . . By retaining the standard option under § 38a-336 and providing for another, different kind of underinsured motorist coverage . . . it is apparent that the legislature chose to address the coverage issue raised in *Gould* not by overruling our holding therein but, rather, by mandating the availability of a more comprehensive, and more expensive, optional form of underinsured motorist coverage." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) Id., 306–308.

In *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 84, the Supreme Court again adhered to its earlier precedent, and *Florestal* in particular, stating that, "[i]n all of these cases, we reasoned that the determination of whether there was underinsured motorist coverage available to the plaintiff was to be determined by comparing the amount of liability insurance potentially available to the plaintiff from the tortfeasor with the amount of underinsured motorist coverage potentially available to the plaintiff under his or her underinsured motorist policy. These potential availabilities were calculated, moreover, by comparing the respective stated policy limits—liability and underinsured motorist. That comparison is mandated by the specific language of § 38a-336 (e) . . . . Furthermore, this simple comparison—of potentially available liability insurance with potentially available underinsured motorist coverage—was to be done, we held, irrespective of whether the liability coverage had been fully or

partially exhausted by other claimants . . . ." Id., 87–88.

The court also reiterated the proper analytical framework that governs claims involving § 38a-336, stating: "Application of § 38a-336 involves two separate inquiries. First, it must be determined whether the tortfeasor's vehicle is an 'underinsured vehicle' within the meaning of the statute. Second, after this determination is made and underinsured motorist coverage is found to be applicable, the finder of fact calculates the amount of the award to be paid the victim." (Internal quotation marks omitted.) Id., 84. As an intermediate appellate tribunal, this court is bound by that precedent. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

## II

With that context in mind, we turn to the statutory language at issue. Section 38a-336 requires automobile insurance policies in this state to include underinsured motorist coverage, which pertains to bodily injuries caused by owners and operators of underinsured motor vehicles. Importantly, the statute contains a detailed definition of that term. Section 38a-336 (e) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."[5]

---

[5] The Bouchard policy contains a definition of an "underinsured motor vehicle" that largely mirrors the statutory definition provided in § 38a-336 (e), stating: " 'Underinsured motor vehicle' means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury bonds or policies applicable at the time of the accident is less than the limit of liability for this coverage."

On appeal, the defendant claims that the plain language of § 38a-336 (e) indicates that an automobile qualifies as an "underinsured motor vehicle" only if the claimant's uninsured motorist coverage exceeds the liability limits of the tortfeasor's policy, as our Supreme Court repeatedly has held. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 87–88; *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 301; *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 632.

The plaintiffs, by contrast, submit that the enactment of P.A. 14-20 served to amend not only § 38a-336 (b), but also altered the definition of "underinsured motor vehicle" contained in § 38a-336 (e). As amended by P.A. 14-20, § 38a-336 (b)—which pertains to underinsured motorist coverage limits—provides in relevant part: "In no event shall there be any reduction of uninsured or underinsured motorist coverage limits or benefits payable . . . for amounts paid by or on behalf of any tortfeasor for bodily injury to anyone other than individuals insured under the policy against which the claim is made, or [for] amounts paid by or on behalf of any tortfeasor for property damage. . . ." In this regard, the plaintiffs emphasize that the definition of "underinsured motor vehicle" set forth in § 38a-336 (e) explicitly incorporates § 38a-336 (b) by reference.[6] They thus argue that, for purposes of the comparison mandated by § 38a-336 (e), the applicable limits of liability under an underinsured motorist policy that was in effect at the time of the accident "means the amount of liability coverage *actually*, not just *potentially*, available" to individuals

---

[6] General Statutes § 38a-336 (e) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than *the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section.*" (Emphasis added.)

insured under that policy pursuant to § 38a-336 (b).[7] (Emphasis in original.)

Under our rules of statutory construction, ambiguity arises whenever statutory language is subject to more than one plausible interpretation. See, e.g., *Redding* v. *Georgetown Land Development Co.*, *LLC*, 337 Conn. 75, 84 n.9, 251 A.3d 980 (2020) ("[o]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation" (internal quotation marks omitted)); *State* v. *Pond*, 315 Conn. 451, 468, 108 A.3d 1083 (2015) ("[b]ecause the statutory language is subject to multiple, plausible interpretations, and it does not expressly address or resolve the certified question, [the language] is facially ambiguous"); *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 68, 52 A.3d 636 (2012) ("[b]ecause we believe that both of these interpretations are plausible, we conclude that the language [in question] is ambiguous"). We conclude that the statutory language in question is subject to more than one plausible interpretation. For that reason, § 38a-336 is ambiguous as applied to the facts of this case.[8] Accordingly, resort to extratextual materials is

[7] That construction was adopted by the trial court in the present case. In its memorandum of decision, the court stated in relevant part: "[Section] 38a-336 . . . defines an 'underinsured motor vehicle' as one with respect to which the limits of liability coverage 'applicable at the time of the accident' is less than the applicable limits of the underinsured motorist coverage of the policy under which claim is made 'under subsection (b) of this section.' Interpreting subsection (e) so that it is consistent with the statute as a whole, including the amended subsection (b), as the court must . . . the limits of liability coverage '*applicable at the time of the accident*' must mean the amount of liability coverage *actually* not just *potentially* available to the plaintiff." (Citation omitted; emphasis in original.)

[8] Multiple judges of the Superior Court have determined that § 38a-336 is ambiguous in similar factual scenarios, necessitating consideration of the legislative history of P.A. 14-20. See, e.g., *Rasimas* v. *Kemper Independence Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. CV-20-6053945-S (December 16, 2021) (*Ozalis, J.*) (reviewing P.A. 14-20 and its legislative history to ascertain "what portion of the tortfeasor's liability limits are 'applicable' to the plaintiff's underin-

warranted. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 17, 981 A.2d 427 (2009).

III

The parties agree that, prior to the enactment of P.A. 14-20, a motor vehicle was not deemed underinsured pursuant to the definition set forth in § 38a-336 (e) where the liability limits in the tortfeasor's policy were equal to or greater than the underinsured benefits in the claimant's policy. Their fundamental disagreement concerns whether the legislature, in enacting P.A. 14-20, intended to alter that definition of an "underinsured motor vehicle."

The legislative history of P.A. 14-20 is illuminating in this regard. On March 4, 2014, the Connecticut Trial Lawyers Association (association) submitted a letter to the legislature's Insurance and Real Estate Committee in support of what ultimately became P.A. 14-20. It stated in relevant part: "Following last year's legislative session, a joint study group comprised of both members of the [association] and the Insurance Association of Connecticut . . . was formed under the auspices of the Connecticut Department of Insurance. Senate Bill number 280 is the product of that working committee. *The legislation was drafted, and is agreed to by both the* [*association and the Insurance Association of Connecticut*] . . . . Under the current state of the law, an underinsured motorist carrier is entitled to reduce its

sured motorist claim" and concluding that, "[i]t is clear . . . after examining the text of § 38a-336 (e), that the 'applicable' liability coverage in this context is the amount actually available and paid to the insured, after other claimants are paid"); *Ismail* v. *Sanchez*, Superior Court, judicial district of New Britain, Docket No. CV-18-6045272-S (September 22, 2020) (*Aurigemma, J.*) ("After reviewing . . . the legislative history of P.A. 14-20, the court agrees with the [defendant] that the public act did not change the definition of 'underinsured motorist' [set forth in § 38a-336 (e)] but, rather, intended to clarify the law concerning deduction to payments due to underinsured motorists. Since the plaintiff and the tortfeasor had identical insurance coverage, the plaintiff was not an underinsured motorist for purpose[s] of P.A. 14-20 . . . .").

coverage for any payments made to the injured party pursuant to the liability policy issued to the [tortfeasor]. The proposed bill does not seek to change this rule. However, the Connecticut Appellate Court interpreted this rule as allowing underinsured motorist carriers to also claim a reduction for payments made to individuals other than the claimant by the liability carrier for the [tortfeasor]. *Allstate* [*Ins. Co.* v. *Lenda*, 34 Conn. App. 444, 642 A.2d 22, cert. denied, 231 Conn. 906, 648 A.2d 149 (1994), and cert. denied, 231 Conn. 906, 648 A.2d 149 (1994)]. A result of this ruling is that the claimant's uninsured motorist coverage can be reduced by payments they never received which were paid by the liability carrier for the [tortfeasor] to other individuals, totally unrelated to the claimant. . . . [This bill] seeks to correct this inequity by disallowing any reduction in underinsured/uninsured motorist coverage for amounts paid by or on behalf of any tortfeasor for bodily injury to anyone other than the individuals insured under the policy against which the claim is being made. [It] further prohibits any reductions for payments made by the tortfeasor on behalf of property damage." (Emphasis added.) That letter was admitted into the record of the hearing of the Insurance and Real Estate Committee on March 4, 2014.

On that date, the president of the association, Mike Walsh, testified before the Insurance and Real Estate Committee and reiterated that "the purpose of this . . . proposed legislation . . . is to essentially correct what we perceived to be an inequity . . . that was created by the Connecticut Appellate Court [in *Lenda*] that allowed [underinsured motorist] carriers to reduce their coverage for payments made by the liability carrier." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 2, 2014 Sess., p. 489. Walsh was the only person who testified before the committee on that bill,

and the letter from the association was the only correspondence entered into the record. That testimony and documentation indicate that the bill that ultimately became P.A. 14-20 was drafted not in response to the precedent of our Supreme Court such as *Gould, Florestal* and *Doyle* but, rather, in response to a decision of this intermediate court decided in 1994—four years *after* our Supreme Court's pronouncement in *Gould* regarding the proper meaning of the term "underinsured motor vehicle." That Appellate Court decision, therefore, demands closer scrutiny.

In *Lenda*, the defendant was injured in a five car collision caused solely by the negligence of Peter Seymour, the tortfeasor. *Allstate Ins. Co.* v. *Lenda*, supra, 34 Conn. App. 445. Seymour's automobile insurance policy provided a total of $100,000 in liability coverage, which was exhausted through payments to the defendant and four other injured individuals for both personal injuries and property damage they sustained. Id., 445–46 and 446 n.3. The defendant was paid $73,071.51 as compensation for personal injuries and $6987.45 for property damage. Id., 446 n.3.

The defendant's underinsured motorist policy in effect at that time provided $100,000 in coverage. Under the terms of that policy, the plaintiff insurer was "entitled to reduce the amount of underinsured motorist benefits payable to [the defendant] by all the amounts paid by or on behalf of Seymour to *all* injured parties both for personal injury *and* for property damages." (Emphasis added.) Id., 453. On appeal, the parties disagreed as to "whether [that] reduction is allowed under § 38a-334-6 of the Regulations of Connecticut State Agencies." Id. After examining the language of that regulation, this court concluded that, "[u]nder the terms and provisions of [the defendant's underinsured motorist policy], [the plaintiff] was entitled to reduce the amount

owed to [the defendant] for underinsured motorist coverage by all amounts paid by or on behalf of Seymour to [the defendant] *and to others* . . . .” (Emphasis added.) Id., 456. Although the defendant also argued that “the limit of coverage should not be reduced by the amounts paid for property damages,” this court disagreed, stating: “From our review of the language of the regulation, we conclude that the ‘damages’ for which there may be a reduction of limits are not limited to bodily injury. Therefore, under the language of the regulation, damages paid for property damages as well as damages paid for bodily injury may be deducted for the purpose of reducing limits of coverage.” Id., 455. The court thus concluded that “the language of § 38a-334-6 of the Regulations of Connecticut State Agencies authorizes [the] type of policy provision” contained in the defendant’s underinsured motorist policy. Id., 456.

In *Lenda*, this court was presented with a question regarding the proper application of § 38a-334-6 of the Regulations of Connecticut State Agencies. *Lenda* did not concern, and did not address, the proper construction of the term “underinsured motor vehicle.”

The legislative history of the debate in the House of Representatives demonstrates that the intent of P.A. 14-20 was to clarify the proper meaning of § 38a-334-6 of the Regulations of Connecticut State Agencies with respect to offsets taken by underinsured motorist carriers. As our Supreme Court has observed, “the statement of the legislator who reported the bill out of committee carries particular weight and deserves careful consideration.” *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 15 n.4, 434 A.2d 293 (1980). In moving for acceptance of the Insurance and Real Estate Committee’s favorable report and passage of the bill that became P.A. 14-20, Representative Robert W. Megna, the chairman of that committee, introduced the bill by stating that “this is a bill that’s been around our

committee for the last several years. . . . It has to do with what we refer to as offsets when it comes to uninsured and underinsured motorists claims. . . . [T]he Department of Insurance had established regulations talking about the application of that section of the statute . . . and offsets. . . . We had several complaints. The trial attorneys came in front of our committee and it . . . became apparent that . . . there was . . . some wiggle room [in the regulations] and some insurers may have been taking offsets greater than what was really intended under the statute . . . . It was a few insurance companies that were taking additional offsets. And what this language represents is an agreement between the industry and the trial attorneys on how the correct application of that regulation put out by the Department of Insurance should apply." See 57 H.R. Proc., Pt. 11, 2014 Sess., pp. 3714–15.

Shortly thereafter, Megna reiterated that the bill was "just really a clarification about the regulation that the Department of Insurance had put out." Id., pp. 3719–20. Megna explained that, as a matter of practice under § 38a-336, "most carriers . . . would simply take an offset for . . . what part of the coverage of the tortfeasor that was paid to . . . the insured. And [what] happened was when the Department of Insurance drafted the regulation one . . . or more carriers had interpreted it in such a way that they can take several offsets for several individuals that were making claim[s] . . . that were passengers of the car or were injured in some manner. So essentially it's really just clarifying . . . the intent of the existing statute." Id., p. 3720.

In his remarks, Representative Richard A. Smith noted that "[t]his is an area of the law that I do practice in so I'm interested in hearing the dialogue. I'm actually happy to hear [that] this bill [is] being proposed. It's been an issue that we have dealt with . . . over the past several years where the offsets have been reduced

just based on the number of claimants disregarding who actually received the money." Id., p. 3732. The following colloquy then ensued:

"[Representative Smith]: But just so I'm sure and for the colleagues out there who might be interested in what [is] in this bill . . . if there is [a] $100,000 [under-insured] policy and a tortfeasor policy of $20,000 how much available coverage then would be available to the insured? . . .

"[Representative Megna]: . . . I believe $80,000. . . .

"[Representative Smith]: And thank you for that. And then if there were several claimants against that [$]20,000 policy which probably would be a $40,000 multiple claim policy. If [$]40,000 of that policy was paid out to various parties and the insured . . . actually received $30,000 total, how much then would be left pursuant to his underinsured policy? . . .

"[Representative Megna]: . . . [H]is offset would be the $30,000 . . . which would leave $70,000 collectible under his [underinsured] policy . . . .

"[Representative Smith]: . . . Thank you. And that's how I . . . came to the same answer and we're not using hard math here so . . . I'm trying to keep it simple. But the [$]70,000 that's available now to the insured because he received [$]30,000 from the tortfeasor, that [$]70,000 under this bill would still be available regardless of how much else the tortfeasor's insurance company paid out. As long as the insured received [$]30,000 then the only offset would be that [$]30,000. Just want to be clear. . . .

"[Representative Megna]: . . . [T]hat's the way I understand it. . . . [T]he intent would be for those carriers not to take an offset greater than that [$]30,000 hypothetical if there were somebody else in the vehicle

that also collected from the tortfeasor's policy. And that's really . . . the essence of the bill before us." Id., pp. 3732–35.

Megna then explained that P.A. 14-20 "comes out of a regulation that the Department of Insurance had [that provided] wiggle room for those few carriers that took other injured [parties'] offsets off of the insured's limit of liability. . . . [The carriers] got that ability . . . through a department regulation . . . . But yes the intent is to clarify the statute so to speak. . . . [B]ut the argument [for this bill] seemed to have come out of . . . the drafting of this regulation by the Department of Insurance that had to do with offsets under that section of the statute." Id., p. 3736.

Shortly thereafter, another pertinent colloquy occurred between Representatives Smith and Megna:

"[Representative Smith]: . . . [L]adies and gentlemen of the Chamber, this is a significant point so for legislative intent purposes what I'm hearing [from] the good Chairman is that . . . the intent of the current legislation is that the offset should be only that amount which the insured actually received. That was the intent then, that is the intent now and that will be the intent moving forward . . . . Is that fair to say? . . .

"[Representative Megna]: . . . Absolutely. That is the intent. . . . That is the intent of this bill. That's the intent of the legislation. . . .

"[Representative Smith]: . . . I appreciate the Chairman's confirmation of the intent of this statute, the intent of the existing law . . . . The intent being that offsets are only those amounts that the insured actually received. That's our current law. This bill just clarifies that law." Id., pp. 3743–45.

Furthermore, although the legislative history contains several hypothetical scenarios that outline when such

offsets properly may be taken, none involved the scenario at issue here, in which the tortfeasor and the claimant had identical coverage limits in their respective insurance policies. In every such hypothetical, the claimant's underinsured motorist coverage exceeded the limits of tortfeasor's liability coverage.[9]

The legislative history thus confirms that the intent of P.A. 14-20 was to clarify the extent to which underinsured motorist carriers properly may take offsets pursuant to § 38a-334-6 of the Regulations of Connecticut State Agencies and § 38a-336 (b). Indeed, the title of P.A. 14-20 is "An Act Concerning Uninsured and Underinsured Motorist Coverage Offsets." See *Peck* v. *Jacquemin*, 196 Conn. 53, 68 n.17, 491 A.2d 1043 (1985) ("[t]he title and stated purpose of legislation are, while not conclusive, valuable aids to construction").

We have carefully reviewed the legislative history of P.A. 14-20. Nothing in it suggests that the General Assembly intended to alter the definition of "underinsured motor vehicle" contained in § 38a-336 (e).[10] If the legislature wanted to amend that statutory definition, it certainly knew how to do so. See *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183 ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly"), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). The

---

[9] There was one instance in which Representative Megna began to reference a situation in which both the tortfeasor's liability coverage and the claimant's underinsured motorist coverage were $100,000. Megna stopped himself midsentence when he realized that, in such a scenario, "if [the claimant] had [a] $100,000 limit it would cancel it out," and then immediately altered the hypothetical to one in which the claimant had a $200,000 limit. 57 H.R. Proc., supra, p. 3754, remarks of Representative Megna.

[10] Although the legislative history is replete with references to underinsured motorist coverage, the term "underinsured motor vehicle" does not appear once in that history.

legislature nevertheless made no changes to § 38a-336 (e).

We also are mindful that "[t]he legislature is presumed to know the judicial interpretation placed upon a statute . . . and [is] presumed . . . to be cognizant of judicial decisions relevant to the subject matter of a statute . . . and to know the state of existing relevant law . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Fernando A.*, supra, 294 Conn. 19; see also *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 722, 735 A.2d 306 (1999) ("[t]he legislature is presumed to be aware of [our Supreme Court's] decisions"). We therefore must presume that the legislature, in enacting P.A. 14-20, was aware that our Supreme Court repeatedly has held that the "[a]pplication of § 38a-336 involves two separate inquiries. First, it must be determined whether the tortfeasor's vehicle is an 'underinsured vehicle' within the meaning of the statute. Second, after this determination is made and underinsured motorist coverage is found to be applicable, the finder of fact calculates the amount of the award to be paid the victim." *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 33; see also *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 84. We also must presume that the legislature was aware that our Supreme Court consistently has held that the former inquiry entails application of the definition of "underinsured motor vehicle" set forth in § 38a-336 (e); see *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 87–88; *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 301; *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 632; which requires a comparison of the coverage limits contained in the respective insurance policies of the tortfeasor and the claimant. In light of the foregoing, we are hard-pressed to conclude that the legislature intended to amend that critical

statutory definition—and overrule that substantial body of Supreme Court precedent—sub silentio.[11]

## IV

We therefore conclude that the legislature, in enacting P.A. 14-20, did not intend to alter the definition of an "underinsured motor vehicle" or to overrule the precedent of our Supreme Court in *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 79, *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 299, and *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 625, as the plaintiffs suggest. To the contrary, our review of the legislative history reveals that P.A. 14-20 was enacted in direct response to this court's decision in *Lenda*, which held that § 38a-334-6 of the Regulations of Connecticut State Agencies permitted insurance carriers to offset underinsured motorist benefits owed to an insured claimant "by all amounts paid by or on behalf of [the tortfeasor] to [the insured claimant] *and to others* for both bodily injury *and* property damages." (Emphasis added.) *Allstate Ins. Co.* v. *Lenda*, supra, 34 Conn. App. 456. As the association emphasized in its March 4, 2014 letter to the legislature's Insurance and Real Estate Committee, the bill that became P.A. 14-20 was drafted "to correct this inequity by disallowing any reduction in underinsured/uninsured motorist coverage for amounts paid by or on behalf of any tortfeasor for bodily injury to anyone other than the individuals insured under the policy against which

---

[11] See, e.g., *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 569–72, 98 A.3d 808 (2014) (*Espinosa, J.*, dissenting) (noting that our Supreme Court "consistently [has] required clear evidence in the legislative record to support [the] conclusion" that "a legislative amendment was intended to overrule our prior decision construing a statute" and "that in the absence of clear and unequivocal evidence of legislative intent to overrule one of our prior interpretive decisions, that decision continues to control the meaning of the relevant statutory provision"); see id. (*Espinosa, J.*, dissenting) (discussing case law construing "clear evidence").

the claim is being made. [It] further prohibits any reductions for payments made by the tortfeasor on behalf of property damage." Simply put, § 38a-336 (b), as amended by P.A. 14-20, precludes the practice affirmatively condoned by this court in *Lenda.*

The plaintiffs nonetheless contend that, because our Supreme Court has held that § 38a-336 is a remedial statute, it must be construed liberally to protect people injured by underinsured motorists. See, e.g., *Tannone* v. *Amica Mutual Ins. Co.*, supra, 329 Conn. 673 ("public policy dictates that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist [responsible for the insured's injury] had maintained a policy of liability insurance" (internal quotation marks omitted)); but see *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993) ("underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor"). In so doing, they overlook the fact that our Supreme Court has expressly declined to apply that maxim of liberal construction in the specific context now before us. As the court explained: "[I]n other contexts we have described our uninsured and underinsured motorist coverage statute as having a broad and remedial purpose. . . . In none of those cases, however, did we employ that description in order to decide *whether* a vehicle met the statutory definition of an underinsured motor vehicle. Furthermore, such a description cannot override the purpose of the statute to put the injured party in no better or worse a position than he would have been in had the tortfeasor carried adequate insurance. Thus, the description of the statute as remedial cannot convert an adequately insured motor vehicle into an underinsured motor vehicle." (Citations omitted; emphasis in original.) *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 88 n.5. That logic applies equally here.

There may well be cases in which an inequity results from the application of the underinsured motorist laws of this state when an accident involves multiple claimants. As our Supreme Court aptly noted, "redress from any such unfairness must be sought from the legislature, not from the courts . . . ."[12] *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 310; see also *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 647, 587 A.2d 415 (1991) ("even if the plaintiff is correct that this result [under the statute in question] is anomalous, his remedy lies with the legislature or the insurance commissioner, not with this court"); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 476, 370 A.2d 1011 (1976) ("[t]his court cannot . . . by a tortured construction of the statutory . . . provisions, indirectly eliminate possible inequities in coverage, where the legislature has failed to do so directly"). Principles of judicial restraint constrain this court from adopting a judicial construction of § 38a-336 that is not supported by either the plain language of that statute or extratextual sources.

In light of the foregoing, and applying the well established precedent of our Supreme Court to the present case, the Wheeler vehicle plainly is not an underinsured motor vehicle as that term is used in § 38a-336. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 87–88; *Florestal* v. *Government*

---

[12] For example, Colorado previously defined an underinsured motor vehicle in relevant part as a motor vehicle with liability coverage limits that were less than the insured's underinsured motorist limits *or* less than the insured's underinsured motorist limits after having been "[r]educed by payments to persons other than an insured in the accident . . . ." Colo. Rev. Stat. § 10-4-609 (1995); see also *Leetz* v. *Amica Mutual Ins. Co.*, 839 P.2d 511, 512–13 (Colo. App. 1992) (interpreting § 10-4-609 and concluding that its reduction provision was not applicable to payments made to persons who were insureds under underinsured motorist policy). In 2007, the Colorado legislature amended § 10-4-609 and deleted that reduction provision. See 2007 Colo. Sess. Laws 1921.

*Employees Ins. Co.*, supra, 236 Conn. 301; *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 632. The tortfeasor's liability coverage is not less than, but rather is identical to, the plaintiffs' underinsured motorist coverage. See General Statutes § 38a-336 (e). For that reason, the trial court improperly denied the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.